## ERWIN, ADM'R, ET. AL. v. FERGUSON, ET AL.

1. When a bill is filed to foreclose a mortgage made to two persons, to secure the payment to them, of a sum of money, due by bond, and one of them dies previous to the exhibition of the bill, the survivor is the only indispensable party to the bill, when no interest is disclosed in any other person in the mortgage debt ; and it is not proper to join the executors of the deceased obligee as parties complainant.

2. But although the executors of the deceased obligee, are improperly joined as complainants in such a bill, the objection, to be available, must be taken by demurrer, and cannot be raised for the first time, at the hearing, or on error.

3. The heir, or devisee of a mortgagor, who dies the owner of the fee, is an indispensable party to a bill to foreclose ; and the personal representative may be made a party, if the complainant choses to proceed for an account.

4. An allegation that the mortgagor died, leaving certain children surviving him, is equivalent to an allegation that they are his heirs at law.

5. When an executrix of a mortgagor, who has refused to qualify as such, is made a party defendant to a bill to foreclose, the objection, if available, is personal to herself, and can only be raised on demurrer.

6. When infants who are defendants to a suit in chancery, reside out of the State, it is essential that the proceedings against them should conform to the statute providing the manner by which absent defendants shall be brought before the court; and the record must also shew that their rights as infants have been scrutinized, and if necessary, protected.

7. In proceedings in chancery against absent defendants, it is unnecessary that any subpœna should issue, when the necessary proof of non-residence is made before the register; when infant defendants are non-residents, it is perhaps necessary, under the amended rules, that their ages and places of abode should also appear.

8. In all suits in chancery against non-resident defendants, it is necessary that the bond required to be given by the statute should be executed, otherwise the decree cannot be sustained, unless they have voluntarily submitted to the jurisdiction.

9. The power exercised by courts of equity, to appoint *guardians ad litem*, for infant defendants, is one to be exercised for their benefit, and therefore the appearance of an absent infant defendant by such a guardian, does not have the effect of a voluntary appearance, so as to obviate the necessity for the statute bond to be given by the complainant.

WRIT of Error to the Court of Chancery for the first Dictrict of the Southern Division.

Erwin, adm'r, et al. v. Ferguson, et al.

This bill is to foreclose a mortgage executed in October, 1830, by Henry Hitchcock and Anne, his wife, upon certain lands and tenements in Mobile, to secure the payment of forty thousand dollars, due by bond, from Hitchcock to Jonathan Ogden and John Ferguson.

The bill states that Ogden, one of the obligees, departed this life previous to its exhibition, and his executors join with the survivor, Ferguson, as complainant in the suit without any specific allegations to show that any interest in the bond and mortgage was transferred to the deceased obligee in his life time, or that he was entitled to any separate interest therein.

It also states that Hitchcock died *testate*, appointing his wife, Anne, sole executrix, who has since refused to qualify as such, and that administration *cum testamento annexo*, has been granted to Isaac H. Erwin, who has taken upon himself the administration of the estate.

It also states that Hitchcock left four infant children, to wit:— Caroline, Andrew, Henry, and Ethan A, but does not set out their respective ages, nor places of residence; nor does it show by distinct and specific allegations, whether they are entitled to any interest in the lands in mortgage, either as heirs at law, or as devisees under the will.

It alleges that the other defendants claim some interest in the mortgaged lands, derived from Hitchcock, subsequent to the execution of the mortgage, but does not set out their respective places of residence. The prayer is, that an account may be taken of the principal and interest due on the bond, and if it is not paid, that the mortgaged estate may be sold.

Process of subpœna is asked for against all the defendants, but only issued against Erwin, McCoy, Johnson, the two Sandfords, Cleveland, Myers, the Insurance Company, and the Bank, upon all of whom it was served. The date of the subpœna is the 17th of April, 1841.

With respect to the other defendants, infants as well as adults, an affidavit was made before the register on the 10th of April, that they were non-residents of this State, but the places of their residence is not shown. Upon this affidavit an order was made, at rules, for publication, requiring the non-resident defendants to appear, plead, answer or demur to the bill, at the then next term of the court, to be held on the 2d Monday of May.

At the May term, 1841, proof was made by affidavit, of the publication of this order, by advertisement for four successive weeks, in a newspaper published in Mobile, and by a copy posted on the court-house door. And by a decretal order of the chancellor, James West, with his consent, was appointed guardian, *ad litem*, of Caroline, Andrew, Henry, and Ethan A. Hitchcock, the minor defendants. This decretal order does not ascertain the respective ages of these infants.

West, the guardian *ad litem*, was served with *subpoena* on the 1st July, and thereby required to answer within thirty days after service. He answered the bill (at what time does not appear from the transcript,) denying all knowledge of the bond and mortgage, and requiring strict proof of the same.

The defendants, Cleveland, Humphries, and Edward Biddle, T. W. McCoy, Thaddeus Sanford, and the Life Insurance and Trust Company, filed separate answers, asserting several interests in the mortgaged premises, derived from Hitchcock subsequent to the mortgage, and alleging that the unsold residue is more than sufficient to satisfy the sum remaining due on the complainant's bond. These defendants pray that their respective interests may be protected by the decree, and some of the answers admit, and others deny, and require proof of the complainant's bond and mortgage. These answers are dated between the 10th and 16th of November, 1841. In the transcript also appears the answer of one James Brown, asserting an interest in the premises, but he does not appear to have been made a party defendant, either in the bill or by any subsequent proceeding.

At the November term, and on the 16th day of that month, a decretal order was made, that the allegations of the bill should be taken as confessed " against the defendants who had not answered," and the case was submitted for a decree on the bill, answers on file, and the decree *pro confesso*. On the next day the case was submitted to the master to take and state an account between the parties; to ascertain and report the amount of debt due to the complainants, and the order in which the mortgaged premises ought to be sold, in respect to the subsequent incumbrances held by some of the defendants.

The report of the master was made on the 18th of the same month, and was "that the mortgage was proved to have been regularly executed and recorded; that the bond, to secure which,

&c., was also produced and proved to have been duly recorded;" that $6001 47-100 remained due, for principal and interest on the bond, on the 20th November, 1841, and that a certain portion of the mortgaged premises was sufficient to produce that sum, and should be first sold.

On the 20th of November, a decree was rendered, which recites that the parties came by their solicitors, and by consent it was decreed that the master's report should be confirmed; that the amount ascertained to be due should be paid by the defendants to the complainants within sixty days, and in default of such payment, the portion of the mortgaged estate mentioned in the report should be sold, &c.

The proceedings stood in this condition when the defendant Erwin, sued out the writ of error on the 7th March, 1842. In April afterwards, the master submitted a statement under oath to the chancellor, at a term of the court then in session, which shewed a mistake in marshalling the mortgaged estate, and an order was then made directing him to rectify the mistake. This was done in an amended report, and a final decree then rendered, *nunc pro tunc*, as of the date of the former decree, directing the order in which the entire mortgaged premises should be sold, unless the complainants demand was satisfied by selling a less quantity.

A great number of errors were assigned, which need not be here recited, as those decisive of the case are examined by the court.

STEWART, for the plaintiffs in error.
LESESNE, *contra.*

GOLDTHWAITE, J.—The questions which have been raised with respect to the parties to this bill, the manner in which the service has been perfected on the defendants, and the decree as against those who are absent, have a preference of examination, because, if decided adversely to the complainants, the investigation of the other points will be rendered unnecessary.

1. We propose then, first, to consider who are the necessary parties, as complainants, to this bill; and if others are joined, whether this can so affect the decree as to cause its reversal.

There is much apparent conflict of decision upon the subject of parties, and it seems to have arisen from the very cautious manner

in which the courts of equity have felt their way to their present extensive and salutary jurisdiction over all classes of mortgages. The estate created by a mortgage, was at first considered by courts of equity, as well as by those of law, as absolutely vested in the mortgagee by a forfeiture of the condition; and when the former, by virtue of their extraordinary powers, first opened the condition, and compelled the mortgagee to take his money and re-convey, they sought out the parties on whom the legal estate was cast. When, subsequently the same courts began to compel the mortgagor to render justice to the mortgagee, it was ascertained that cases existed, in which the latter had no interest, in consequence of the assignment of the debt voluntarily, or by operation of law. In other words, the legal estate under the mortgage and the equitable interest in it, in consequence of the assignment of the debt, became vested in different individuals. Even under such circumstances, the courts endeavored to adhere to rules which had governed the first class of cases, and the original mortgagee, or his heirs, were continued as parties, although it was entirely evident that they had no interest in the litigation, and would not even be permitted to re-convey the equity of redemption, to the prejudice of the right of him who was entitled to the debt. It is somewhat doubtful, whether the English courts of chancery, do not adhere to these rules at the present day, as some recent cases hold, that the person having the apparent legal interest under the mortgage, is an indispensable party, either as complainant or defendant. [Scott v. Nichol, 3 Russ. 476; Ward v. Williams, 4 Madd. 186. See also Mitford, 179; Cathcart v. Lewis, 3 Bro. C. R. 516; S. C. 1 Vesey, jr. 463; Ray v. Fenwick, 3 Brow. R. 25.] We say it is doubtful, because in analogous cases, and when the same rule, if it is the correct one, ought to govern, the same courts, have held, that the assignor of a mortgage security is not an indispensable party when a bill to foreclose is brought by his assignee. [Bruce v. Harrington, 2 Atk. 235; Blake v. Jones, 3 Anst. 651. See also Miller v. Bear, 3 Paige 467; Whitney v. McKinney, 7 Johns. Ch. 144; Trecothic v. Mason, 4 Mason 41.]

In the American courts, from the earliest period, courts of law, as well as courts of equity, have considered mortgages in a more practical point of view, and the legal estate is considered as remaining in the mortgagor, for all purposes, even after a forfeit

ure of the condition until an actual entry is made by the mortgagee. [4 Kent's Com. 160; Clark v. Beach, 6 Conn. 142.] And it is doubtless with reference to these American decisions, as well as with regard to the apparent conflict of the English cases, that Judge Story doubts the correctness of the rule laid down in Mitford, and says, "when the assignment is absolute, and unconditional, leaving no equitable interest whatever in the assignor, and the extent or validity of the assignment is not doubted or denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make him a party. At most, he is merely a nominal or formal party in such a case. It is a very different question, whether he may not properly be made a party, as the legal owner, although no decree is sought against him, for in many cases, a person may be made a party, although he is not indispensable. [Story's Eq. Plead. 147, § 153.]

If we were called on to consider the estate conveyed by this mortgage in a mere legal aspect, it may be conceded to be a joint tenancy in both the mortgagees; and, as the right of survivorship in such estates is here destroyed by statute, on the death of *Ogden*, his heirs inherited his legal estate; but under no circumstances, can his executors, unless they are devisees of his real estate, claim any legal right under the mortgage, or equitable interest in the land secured by it. The legal estate, such as it is, must descend to his heirs; the legal as well as the equitable interest in the bond, remains with the survivor, who alone is competent to receive satisfaction for, or give a discharge of the debt; and consequently he is the only indispensable party complainant to this bill. It also follows that the executors of the deceased partner were improperly joined to this suit.

2. But although they are thus improperly joined as complainants, it is very clear that the defendants cannot in this place, for the past time, claim any advantage of this error. The objection could have been made by any one of the defendants on demurrer, but not otherwise. [Story's Eq. Plead. 292, § 509; 417, § 544.] The reason why the defendant is not permitted to avail himself of such a defect at the hearing, or on error is, that the plaintiff could have amended his bill if the error had been pointed out, and the defendant ought not to be allowed to start such an objection when the plaintiff is not a condition to amend.

It is thus shewn that the misjoinder of complainants cannot affect the cause at this stage of the proceedings.

3. As to parties defendant to a bill to foreclose, the rule seems to be that the heir or devisee of a mortgagor, who dies the owner of the fee, is an indispensable party. [Story Eq. Plea. 181, § 196; Duvall's heirs v. McLoskey, 1 Ala. Rep. N. S. 708.] If, however, the estate has been conveyed by him, or assigned by operation of law, then only the assignee need be made a party; [ib. 182, § 197; Wilkins and Hall v. Wilkins, 4 Porter 245.]

In this case it is not material to inquire whether the personal representative of the deceased mortgagor is an indispensable party to a bill seeking a sale, because it is conceded by all the cases that such personal representative may be made a party, if the complainant chooses to proceed for an account. [Story's Eq. Pl. 182, § 197. See also Wilkins v. Wilkins, 4 Porter 245; Inge's heirs v. Boardman, 2 Ala. Rep. N. S. 331.]

The bill does not allege that any absolute assignment was made by the mortgagor of the estate during his life time, and therefore we conclude that his heirs at law are indispensable parties; and as such, the complainant insists they are made.

4. It is true, the bill does not technically allege that the *children* of the deceased mortgagor are also his heirs at law, but we think it would be a most strained conclusion that they were not. We may imagine cases in which *children* are not necessarily *heirs*, but they are where there can be no heirs, as in the case of an alien, or where an alien is naturalized having adult alien children. We will assume that the legal presumption is that every owner of land, is a citizen, and we think it equally just to conclude, in the absence of any shewing to the contrary, that the children of a citizen are *prima facie* his heirs. If the fact is contrary to this legal presumption, the case would then be a proper one to disclose the fact by plea and answer, but upon the face of the bill, we cannot discover that any one who should be a party defendant is not so.

5. If it be true, as supposed by counsel, that the executrix of the mortgagor, who refused to act, is improperly made a party, this is an objection personal to herself, and can only be raised on demurrer. [Story's Eq. Pl. 417, § 544.]

6. The next and only other matter intended to be examined, is that which relates to the manner in which the infant defendants

are brought before the court; and this will also extend to such of the other absent defendants as have not submitted to the jurisdiction, either by appearance or answer.

It has not been contended that courts of equity, as such, have any inherent jurisdiction over absent defendants, even if connected with property within the jurisdiction. Our statute seems to deny any such jurisdiction, unless the ground of action, or the transaction on which the bill is brought takes place within the State. [Digest 290, § 27.]

In such cases the statute provides " that any defendant against whom subpœna or other process may issue, who shall not cause an appearance to be entered within such time and in such manner as by the rules of the court, the same ought to have been entered, in case such subpœna or other process had been duly served; then, if affidavit is made that such defendant resides beyond the limits of the State, the court may make an order, directing such defendant to appear at a certain time therein named." A copy of this order is required to be published within forty days thereafter, in some gazette, regularly published within the State, for such space of time as the court shall direct. This order is also within the same time to be posted up at the door of the court house, where made. In addition to this, the court at its discretion may direct the order to be published in any gazette of the United States, for such space of time as it may deem reasonable. If after this, the defendant does not appear within the time limited by the order, or within such further time as the court shall appoint, then, on due proof of publication as aforesaid, the court may order the plaintiff's bill to be taken *pro confesso.*

The statute subsequently declares that the proceedings against absent defendants shall, notwithstanding be subject to certain restrictions and limitations. These are, 1st. That before obtaining any decree the complainant shall give bond to abide such order touching the restitution of the estate, or effects to be affected by such decree as the court may make concerning the same, on the appearance and petition of the defendant, to have the cause reheard. 2. If the decree is against a person residing beyond the limits of the State, at the time of pronouncing the same, and such person shall, within two years afterwards, reside within the State, or become publicly visible therein, then such defendant shall be served with a copy of the decree within a reasonable time after

such residence or appearance shall be known to the complainant. 3d. In case the defendant die within the two years, and before the service of the copy of the decree, and his heir have any real estate, of which possession shall have been given to the complainant, notice shall be given to him ; or, in certain cases of disability, to his guardian ; and in case of personal estate the notice is to be given to the personal representative. 4th. That the decree shall stand absolutely confirmed against such person as shall have notice, if he shall not appear within twelve months after service and petition to have the cause reheard. 5th. If the person served with such copy of the decree within twelve months thereafter, or if any person not so served within three years after such decree, shall appear and petition to be heard touching the matter of the decree, and shall pay all costs, such person or his representatives, or any one claiming under him by virtue of any act done before the commencement of the suit, may be admitted to answer the bill ; and such proceedings shall be had as if no decree had passed. 6th. After three years from the decree, if there is no appearance, the same shall stand absolutely confirmed. [Digest, 289, § 23 to 27.]

The 13th section of the act of 1841, authorises the several registers to grant orders of publication, and the 14th section, when regulating the mode by which guardians, *ad litem*, for infants, shall be appointed, expressly directs that when minors of any age reside out of the State, publication shall be made as in other cases.

The order for publication in this case, was made by the register at the rules in April, 1841, and consequently is to be governed by the acts recited, and not by the rules of chancery practice adopted at the January term of the same year, because these last were not to take effect until the first of May thereafter.

After what this court declared to be the proper course with respect to infant defendants, in the case of Walker v. Hallet, [1 Ala. Rep. N. S. 379,] it was to be expected that their rights would be scrutinized, and if necessary, protected ; but that has not been done in this case. The record does not disclose that there was any proof of the actual minority of these parties, and for that reason if for no other, the judgment, upon the authority of that case, must be reversed.

We may remark that the present rules afford ample protection

Erwin, adm'r, et al. v. Ferguson, et al.

to this class of suiters, when considered in connection with the statute.

7. It is urged also, that these proceedings are not warranted, inasmuch as the statute requires a subpœna or other process to issue. It is true the statute might bear such a construction, but we do not think it was intended to make a useless act important to the service of process. The fact of absence or non-residence can be better and more safely ascertained by affidavit, than by a mere office return; and there is no reason for supposing that mere delay was intended by the statute. Our conclusion is, that the order was properly made by the register upon the affidavit, so far as the mere non-residence is concerned. Under the amended rules, it is perhaps requisite, in the case of infant defendants, who are non-resident, that their ages and places of abode should also appear.

8. It is very evident from the statute we have in part recited, that the legislature has guarded the rights of absent defendants with the utmost solicitude; and it is impossible to sustain this decree against those who have not voluntarily submitted to the jurisdiction, without declaring the statute inoperative, because the bond required to be given in all cases where there are such defendants decreed against, does not appear to have been executed.

9. If the adult defendants who have not answered are necessary parties to the bill, their rights are prejudiced by the decree, and therefore they have the right to insist on the bond. But it is indispensable with respect to those of the infants who are non residents, for the reason that they are indispensable parties. The authority to appoint a guardian *ad litem*, is vested with the chancellor, in order that the interests of the infant may be protected; but if the protection thus thrown around them in one aspect of the case, is to be construed as a voluntary appearance and submission to the decree of the court, then they are deprived of the bond, which adult non-residents cannot be deprived of, except by a voluntary appearance. Consequently, they are in a worse condition than if they were adults. To give such a construction to the appointment of a guardian, or to his answer for his wards, would be at variance with the well recognized rule that every thing will be intended in favor of infants, and nothing against them, and it ought not to prevail unless the legislature has clearly directed it.

This in our opinion is not the case, and, for the errors we have

considered, the decree of the chancellor is reversed, and the cause remanded for further proceedings.