## TOULMIN, ET AL. v. HAMILTON, ET AL.

1. A writ of error sued out in a Chancery case in the names of the parties to the original bill, where new ones are made by a supplemental bill, is irregular ; but, under the statute the writ is amendable by the record.
2. Where one procures bills to be drawn for his accommodation, and afterwards executes a deed of trust as a security to the acceptors, to secure promissory notes which are given as well for the amount of the accepted bills, as for an amount due the acceptors, on account stated ; the holders of the bills may resort to the trust property for the payment of them when dishonored, if the promissory notes have not been negotiated to *bona fide* purchasers, for a valuable consideration.
3. *Quere?*—Whether the trust fund is first to be applied to discharge the sum due the acceptors of the bills upon the account stated, or divided *pro rata*, to that and the several bills.
4. Where a bill is filed by the holder of a bill of exchange, to subject a trust fund, which the principal debtor has placed at the disposal of the accommodation acceptor, *it is not necessary to alledge that the holder has exhausted his legal remedies on the bill.* It is only a creditor at large, who is required to show a lien established, by suing out execution.
5. Where several persons are interested in the distribution of a trust fund, this is a sufficient privity to warrant their being made parties to the same bill, either as plaintiffs or defendants.
6. When a bill discloses that one holding a bill, to the owner of which the right of distribution attaches, has the possession merely, and that the ownership is in another, that other is the proper party, and not the one who has the possession merely ; but the omission of such a party is no reason to dismiss a bill for want of equity.
7. When after filing a bill some of the complainants become bankrupt, as well as some of the defendants, and some of each party are represented by a common assignee, he is properly made a party defendant upon the supplemental bill of the remaining complainants.
8. If one is improperly made a party defendant, the objection is personal only, and must be raised on demurrer.

Writ of Error to the Court of Chancery for the first district.

THE case made by the bill is this: In the year 1837, one Rufus Green, at Mobile, for the accommodation of Jeremiah Austill, drew four bills of exchange, for five thousand dollars,

on Hamilton & Cole, of New York. One of these bills is dated 4th February, 1837, at sixty days sight; another the 17th of the same month, at sixty days sight;.another the 21st of the same month, at sixty-nine days date; and the last of the same date, at seventy-one days date. The first of these bills was discounted soon after its making, by Toulmin, .Hazard & Co.; the second was purchased by Sayre, Converse & Co., for a valuable consideration; and the third was discounted by Eli Wainright. These bills are offered to be produced, and the persons severally named as the holders were the complainants. The fourth bill is alledged to belong to the New Orleans Canal and Banking Company, and to be in the possession of George B. Ogden, who is prayed to be made a defendant.

All those bills were afterwards accepted by Hamilton & Cole, between the 13th of February and the 3d of March, 1837. Under the expectation, and belief, that they would pay those bills at maturity, and being then indebted to them in the further sum of 11,533 dollars and seventy cents, Austill, on the 20th of April, 1837, executed to them his two notes, each for the sum of 15,716 dollars and eighty-five cents, payable at one, and two years, as well to secure them against the bills, so accepted by them, as to secure the payment of the account stated. On the 22d April, 1837, Austill likewise executed a deed, by which he conveyed to Robert Hamilton, a resident of Texas, in trust for Hamilton & Cole, certain lands and slaves, which the trustee was to sell at public auction, if the promissory notes, before named, were not paid in two years from date. This deed is alledged to have been duly proved, and recorded, in the proper office, and was delivered to Green, as the agent of Hamilton & Cole. Green afterwards delivered it, with the note first to fall due, to James Martin, for the use and benefit of Hamilton & Cole. The other promissory note was delivered to Sayre, Converse & Co., who offered to produce it, as well as a certified copy of the deed, when requisite.

Hamilton & Cole became insolvent, previous to the maturity of the bills, and none of them were paid, but were returned, protested, to the holders.

The complainants assert, that, as the bills were protested, the lands and slaves conveyed to Robert Hamilton, in trust, cannot be equitably and justly appropriated to the sole use and

benefit of Hamilton & Cole, in payment of the note held by Martin, for their account, but that the avails of the same, ought to be appropriated entirely to the complainants, as holders of the bills, in the proportion that they bear to the whole debt of 31,433 dollars and seventy cents.

Hamilton & Cole, combining with Robert Hamilton and James Martin, hold the deed of trust to be exclusive, and refuse to recognize the rights of the complainants. Martin has indorsed the note held by him, to Robert Hamilton, and obtained a judgment thereon, against Austill, in the United States Court, under which he has caused the equity of redemption of Austill, in the lands, to be levied on and sold, purchasing the same in his own name. Hamilton and Cole have taken all the slaves, except one, which Robert Hamilton permitted, to be sold under an execution against Austill, and sold and delivered them to one Thomas Prince, to satisfy a debt due by them to him.

The prayer of the bill is, that the lands and slaves may be appropriated, *pro rata*, to the payment of the bills and the account stated, due from Austill to Hamilton & Cole; that an account may be stated of the price of the slaves sold to Prince, and the other property, &c. &c.

Hamilton & Cole, Robert Hamilton, Austill, Martin, Ogden, and Prince, are made defendants.

The complainants afterwards moved for leave to file a supplemental bill, making Wm. C. H. Waddle, who is the assignee in bankruptcy of Hamilton & Cole, and P. T. Harris, the assignee in bankruptcy of Daniel C. Fowler, and C. C. Hazard, (parties in the firm of Toulmin, Hazard & Co.,) and of William Sayre, of the firm of Sayre, Converse & Co., and of Jeremiah Austill, parties *defendant*, as it is stated in the transcript.

Leave being given, a supplemental bill was filed, in which Toulmin, William P. Converse, and Eli Wainright are stated as complainants; it recites the filing of the previous bill, in the names of the parties in that behalf stated, against the then named defendants, and that, since the filing of the bill, Sayre, Fowler, Hazard, Austill and Hamilton, have filed petitions to be admitted bankrupts, and that P. T. Harris has been appointed assignee of their several estates, rights, and effects.

A similar statement is made as to Hamilton & Cole, and that

W. C. H. Waddle has been appointed assignee of their estate, effects, &c. It then proceeds to alledge that the complainants, in the supplemental bill, are entitled to have the suit continued in their behalf, and to prosecute against Harris, as the assignee of the defendant, Austill, and of the complainants, Sayre, Hazard and Fowler, and against Waddle, as the assignee of Hamilton & Cole. The supplemental bill varies, slightly, from the original bill, in declaring the fact, that the bills drawn by Green, were payable to, and endorsed by, Austill. Subpœnas are prayed, as to Harris and Waddle only, as the supplemental parties.

Martin alone answered the bill, but the recital of his answer is unnecessary, as the Chancellor, on motion, dismissed the bill, for want of equity. This is now assigned as error.

J. F. ADAMS and L. GIBBONS, for the plaintiff in error, insisted—

1. That the promissory notes executed by Austill to Hamilton & Cole, were merely a security for the payment of the bills, and however the case might be, if those notes had been passed to others, in the course of business, the bill here shows that one of them is held by Martin, for the use of Hamilton & Cole, and the other is held by Sayre, Converse & Co., who do not pretend to have received it under circumstances to vest in them an exclusive right. Therefore, there is nothing to prevent the operation of the rule next relied on.

2. The rule in equity is, that a creditor, or a surety, paying the debt, is entitled to the benefit of all securities, that the debtor has given to secure the debt. [1 John. Chan. 129; 2 Ib. 418; 1 John. Cases, 205; 1 Eq. Ab. 93; 11 Vesey, 12; 14 Vesey, 162; Theob. on Surety, 252; 1 Story's Eq. 481; 4 Dana, 27.]

STEWART, contra, moved to dismiss the writ of error, because it runs in the name of Toulmin, Hazard & Co. complainants, and Robert Hamilton, George B. Ogden, James Martin, Jeremiah Austill, and T. McPrince, defendants. Converse and Wainright are each parties, and are not mentioned. So, also, are Waddle and Harris, who are likewise omitted in the writ.

Upon the merits, he insisted the decree was proper, because—

1. There is no privity between the complainants and defend-

ants. [Story's Eq. Plead. 218, § 262; 395, § 514.] The distinction between the debt, and the surety for the debt, is stated, 7 Cranch, 71.

2. The contract between Austill and Hamilton & Cole, is not one for indemnity, but is an actual payment of what the latter asserted was due. The bills were charged as debits, and the debt created by their acceptance was discharged by the notes. The principle of subrogation does not apply to the case stated.

3. If it did, the bill is fatally defective in not showing a judgment at law upon the bills, and a return of no property. As, until this, the remedies at law may be sufficient, without the aid of equity.

4. There is a misjoinder of complainants, because their titles are several, if they have any, and differently obtained.

5. The parties are not proper. Ogden has no interest whatever, and the bill held by him is owned by the Canal and Banking Company, which is not made defendant.

6. There is a confusion of parties, as the case stands; Converse is a complainant, and Harris, who represents Sayre as the partner of Converse, is a defendant. The same remark applies to Toulmin and to Harris, as representing Hazard and Fowler. It is one portion of a firm, seeking to make another portion defendant to a bill, when the right to recover is a joint right to both partners.

7. There is no equity as to Prince, as the purchase by him is not charged to be fraudulent, or collusive.

GOLDTHWAITE, J.—1. It is certain, the writ of error attached to the transcript entirely misdescribes the parties to the suit, as it stood when the decree was made, but it is equally certain, that it comes within the provision of the statute, authorizing the amendment by this Court, of writs of error. [Clay's Dig. 312, § 39.] The original bill, in connection with the supplemental bill, sufficiently discloses who the parties were, plaintiffs, as well as defendants, at the time of the decree, and the writ of error can be amended by them.

2. We have given an attentive consideration to the case made by the bill, but cannot arrive at the same conclusion as the Chancellor came to. It will be seen, that the sole consideration for the note of 31,000 dollars, and upwards, is alledged

to be the discharge of the previous indebtedness to Hamilton & Cole, by Austill, of something more than 11,000 dollars, and as a security against the payment of the bills drawn in his favor by Green, and indorsed to the several complainants. These bills, it is true, were then accepted by Hamilton & Cole, and they probably considered Austill as their debtor on this account; but it cannot be seriously pretended, they have the right to apply the proceeds of the trust property beyond the 11,000 dollars, to any thing besides the extinguishment of those bills. The deed of trust is a mere security for the payment of the promissory notes, and if these had been passed to innocent persons, in the usual course of trade, the equities arising out of the acceptance, and non-payment of the bills, very possibly might not be open to inquiry; but the bill directly charges, that the deed of trust, with the note which first fell due, was delivered by Green, who received it as the agent of Hamilton & Cole, to Martin, for their use and benefit, and that he, as their attorney at law, indorsed the note to Robert Hamilton, who is the trustee named by the deed. The other is in the hands of Sayre, Converse & Co., who, as complainants, concede, by the allegation and prayer of the bill, that they have no exclusive claim upon it. The notes being thus in the hands of persons, who do not insist upon any right to their proceeds, as purchasers for a valuable consideration, without notice, the equities may be considered, as if they yet were in the possession of Hamilton & Cole, or, of Waddle, their assignee.

The allegation is, that the notes were drawn by Green, for the accommodation of Austill, and the inference, from the original bill, we think, is, that he was also a party; however this may be, the fact is alledged in the supplemental bill, that they were drawn in his favor. The relation of the manner of the execution of the deed of trust, shows, also, that the acceptance, by Hamilton & Cole, was also for his accommodation. Austill, is, therefore, to be considered, as between himself, Green and Hamilton & Cole, as the principal debtor, and the drawer and acceptor, as his sureties. The deed of trust, then, is a security, given by the principal debtor, to one who stands to him as a surety, and the question is, whether the holder of the notes has a right, in equity, to enforce the security for his

benefit. Of this, we think there is no doubt. In Moses v. Murgatroyd, 1 John. Chan. 119, it was held, by Chancellor Kent, that an absolute assignment of goods, intended to indemnify the assignee, on account of his indorsement of notes, was held applicable in equity, to a holder of the notes; and in Phillips v. Thompson, 2 Ib. 418, the same doctrine was applied to a collateral security, taken by the indorser of a note from the maker. In both these cases, the suits were brought by the creditors holding the notes, which were intended to be secured. The same principle is recognized in Manse v. Harrison, 1 Eq. Ca. Ab. 93, and Wright v. Mosley, 11 Vesey, 12; see also 1 Story Eq. § 638.

3. There is a difficulty in this case, even after it is ascertained that the holders of these bills are entitled to any security, given by Austill to Hamilton & Cole, for their indemnity, as the deed of trust is conceded not to have been solely for that purpose, but was also· to secure the payment of the sum of 11,000 dollars, and upwards, already due from Austill, but upon which a further indulgence was given. Whether the trust is to be considered as applicable, first, to the benefit of the debt then owing, or is to be divided *pro rata*, we shall not at present decide, for the reason, that it has not been passed on by the Chancellor, and because the matter already ascertained, is sufficient to show there is equity in the bill, even if the holders of the bills, are to be postponed until the debt to Hamilton & Cole is first satisfied.

4. Another reason assumed by the Chancellor for dismissing the bill, is, that it contains no allegation that the legal remedies on the bills have been exhausted. This is certainly an essential averment, when a creditor seeks to have satisfaction out of the equitable estate of his debtor. [Mitford, 128 ; 2 Story Equity, § 1216, b.] Here, however, the holder of these bills do not claim the interposition of the Court, to have a satisfaction out of the equitable estate of those debtors merely as such; but they desire a fund specifically appropriated by the debtor, for the purpose of paying those bills, may be applied to that object. It is a trust which results from the nature of the appropriation, and is an original ground of equity jurisdiction. In Neale v. Marlborough, 3 Mylne & Craig, 407, Lord Cottenham endeavors to ascertain the principle upon

which it is held essential, in Courts of equity, that a general creditor, when, seeking to subject an equitable freehold interest of his debtor, in lands, shall be held to alledge and prove the suing out of an *elegit*, and then says, "it is not correct to say the creditor obtains a lien, (or the equitable estate), by virtue of his judgment. It he had an equitable lien, he would have the right to come here to have the estate sold." We have been referred to no decision, where it is maintained, that a creditor, having a trust created for his benefit, either expressly, or by implication, can be refused the aid of a Court of equity to enforce it, on the ground that he has omitted to proceed at law, against the legal estate of his debtor, nor in any way affected by the trust. As we unnderstand the rule, it is only a creditor at large, who is required to show that his lien at law, has attached by suing out execution.

5. Independent of these objections, it is urged, there is no privity between the complainants and the defendants. This objection seems to us to be founded in a misapprehension of the ground, upon which the aid of the Court is invoked. The holders of the bills do not pretend they have any right to interfere in the administration of the trust, but they state the facts, from which they claim the trust shall be applied for their benefit, instead of those who are indicated by the deed. It is the trust for the common benefit of the holders of the bills, which establishes the privity between them, and those who are seeking to misapply the trust fund, and, in our judgment, the existence of the trust once established, the privity becomes apparent, as a matter of course.

6. It is very certain, that Mr. Ogden has no interest in the subject of this suit, if the statement in the bill, in that respect, is accordant with fact, as it is said, the bill in his possession is owned by the New Orleans Canal and Banking Company; but this defect does not warrant a dismissal of the bill, without giving the opportunity to amend it. The rule is, that whenever the want of proper parties appears on the face of the bill, it is good cause of demurrer, and if the parties omitted are necessary to the decree to be made under the bill, the exception may also be insisted on in the answer, or at the hearing; but in such cases, the Court will always give leave to make new parties, either by amendment or by supplemental bill.

47

And even if the bill is dismissed for this defect, the dismissal will be without prejudice. [Story Eq. Plead. § 541; Batre v. Auze, 5 Ala. Rep. 173.]

7. The other objections, as the confusion of parties, as they are made by the supplemental bill, do not seem to be sustained by the record, or, rather the confusion is in appearance only, and is caused by the circumstance, that several of the parties, plaintiffs as well as defendants, have become bankrupt, since the institution of this suit, and they are all represented by the official assignee. It is said that Harris, as assignee of one of, or more of the complainants, cannot sue himself, as the assignee of one or more of the defendants. This may be entirely true, and yet the necessity may exist, that all the bankrupt estates shall be before the Court by their assignees. Here the assignees are made parties, defendants, and the Court, in its decree, will ascertain, and if necessary, separate the rights, which may pertain to each. We think the assignees were properly made parties defendants, and as to the other defects of the supplemental bill, they are either immaterial, or should have been reached by demurrer.

If Prince is improperly made a party, it furnishes no reason to sustain the decree dismissing the bill. Such an objection is personal only, and can only be raised on demurrer. [Erwin v. Ferguson, 5 Ala. Rep. 158; Story's Eq. Plead. § 544.]

Our conclusion is, that the bill contains equity, and therefore, the decree dismissing it for the want of equity, is reversed and the cause remanded.