## STODDER, ET AL. v. TOULMIN, ET AL.

1. When a debtor appropriates property in trust to the satisfaction of the acceptors of certain accommodation bills, then running to maturity, and also to the payment of an account due to the acceptors, and the bills are dishonored, the holders are entitled to distribution of the trust fund, in the proportion their bills bear to the whole sum intended to be secured. It makes no difference that the drawer and acceptors prove insolvent, because, as creditors at large of the acceptors, the bill holders have no priority over other creditors, who are entitled to the sum to be distributed out of the trust fund for the account due the acceptors.

Writ of Error to the Court of Chancery for the first District.

THIS is the same case reported under the title of Toulmin et al. v. Hamilton, et al, 7 Ala. Rep. 362. It comes here now, after some change in the parties, on the question of distribution referred to, but not decided, in the third paragraph of the opinion then delivered. In order to present the facts of the case in connection with the present judgment, they will be here recited.

In February, 1837, four bills of exchange, each for $5000, were drawn at Mobile, by one Green for the accommodation of J. Austill, on Hamilton & Co. of New York. The bill first due was discounted, or purchased by Toulmin, Hazard & Co.—the second by Sayre, Converse & Co.—the third by Eli Wainright—and the fourth by G. B. Ogden, for the New Orleans Canal and Banking Co. They were all accepted by

Stodder, et al. v. Toulmin, et al.

Hamilton & Cole, between the 13th February, and the 3d March of the same year,. Under the expectation they would pay them at maturity, and being then indebted to them in the further sum of $11,533, Austill, on the 20th of April, executed to them his two notes, each for the sum of $15,716, payable at one and two years, as well to secure them against the bills so accepted, as to secure the payment of the sum due them by the former account. On the 22d of April, Austill executed a deed, by which he conveyed to one Hamilton certain lands and slaves, which were to be sold by him for the benefit of Hamilton & Cole, if the notes before mentioned were not paid in two years from their date. Green, to whom the deed was delivered, as the agent of Hamilton & Cole, afterwards handed it over to James Martin, with the note first falling due, for the benefit of H. & C. The other note was delivered by Green to Sayre, Converse & Co. the holders of the second bill of exchange. Hamilton & Cole never paid the bills, but became insolvent previous to their maturity. The object of the bill is, that the property conveyed by the deed of trust, may be appropriated to the payment of the bills of exchange *pro rata*, instead of being applied by Martin to the discharge of the note held by him, or transferred to Hamilton, 'the trustee under the deed.

The answer of Martin insists that the property conveyed by the deed of trust is applicable to the payment of the notes and that the holders of the bills have no interest ·in the trust.

The chancellor, in the first instance, dismissed the bill for want of equity, but after the reversal of that decree by this court, and upon the cause being remanded for further proceedings, he was of opinion that the holders of the bills of exchange were entitled to a preference of payment, out of the trust fund, and directed a decree to be prepared to this effect.

This decree is now assigned as error.

J. A. CAMPBELL, for the plaintiff in error, insisted, that the failure of Hamilton & Cole, to pay the bills accepted by them, occasioned a partial failure of the consideration of the two

104

notes, and therefore Austill, in equity, is entitled to a credit for the sum he may be required to pay on the bills, but the deed of trust would continue a security for the sum actually due H. & C. by the previous account. All the equities of the complainants are derived from Austill, and their claim cannot extend beyond his. H. & C., or those now having their interest, are entitled to the extent of their account, and with this they unite the legal title under the deed of trust. They have therefore the legal title, with an equal equity, even if their equity is not paramount.

The trustee, *or cestui que trust*, could properly apply the monies received under the deed to the payment of the account, if they thought proper. And it was their duty to do so after the failure to pay the bills. [Toulmin v. Copeland, 2 C. & F. 681; Halburn v. Bissell, 1 Bailey Eq. 430; Stewart v. Cochran, Ib. 380.]

G. N. Stewart and J. F. Adams, contra, argued, that the bill holders were entitled to priority of satisfaction—

1. Because their rights are against both H. & C. and Austill, whereas that of H. & C. are against Austill only.

2. The contract was, in effect, that H. & C. should advance the money to the bill holders, and be reimbursed in one and two years. Therefore, by this contract, they assumed the risk of loss.

3. It is clear, Austill did not intend to secure the amount due H. & C. and without the advance of the amount of the bills, the appropriation might not have been made. H. & C. cannot therefore, by a breach of their contract, place themselves in a better condition than they would hold by its performance, and as a consequence the bill holders are first entitled. There is no known exception to the rule, that one by his own wrongful act cannot place himself in a better condition than by performance of his duty.

4. The appropriation by Austill, must be considered as made, in the first place, to raise the sum of the drafts, as they were the motive which induced him to act, and as they were were first due. If the money was in court, the bill holders would be entitled to it, as creditors of H. & C., who are insolvent, and if they had the property, H. & C. could not re-

cover it from them without paying the bills. In any view, it seems the claim of the bill holders is preferable to that of H. & C., and his assignee can stand in no better position unless sustained by a *bona fide* transfer, aided by a valuable consideration.

5. Independent of these considerations, H. *&* C. have laid by for several years, and never asserted any claim, whilst the bill holders are actively prosecuting their remedies.

GOLDTHWAITE, J.—When this cause was here at a previous term, the bill was sustained, against the motion to dismiss for want of equity, on the ground, that if the trust fund was more than sufficient to pay the sum actually due to Hamilton *&* Cole, by the account, then the bill holders were entitled to the remainder of the trust fund, as that was created for the purpose of securing the payment to H. *&* C. of the sums they should pay on those bills, as well as the amonnt previously due them ; but we declined to decide whether the trust fund was applicable; in the first instance, to the payment of the debt actually due to H. *&* C., or whether it was to be divided, *pro rata*, to their account and to the holders of the bills. These are questions now to be decided.

By referring to the report of the case, as it was when here before, [see 7 Ala. Rep. 362,] it will be seen, we considered the equity of the bill holders as arising out of the fact, that the trust was created as a security to H. *&* C. for the sum which all the parties to the deed conceded was then due to them. In point of fact, as well as of law, a portion of this sum was not then a debt to H. & C., and never became so from their omission to pay these bills. So far as this sum was concerned, the trust was a security given to the acceptor of the bills, to pay them, and was available to the holders when these were dishonored. The trust however, was not created solely for the payment of these bills, and therefore the bill holders cannot claim its appropriation to themselves, to the exclusion of the other object, unless some distinct equity arises out of the insolvency of H. & C. and of Austill. That this furnishes no distinct ground of equity is evident from the circumstance, that if it was alone, the bill holders would be mere creditors at large, and without any title to sat-

isfaction out of specific assets, either of H. & C. or of Austill. As bill holders, they have the right to claim that the trust fund shall be applied to the payment of the debt it was in- intended to secure, but they are interested in this debt, only in the proportion which the bills bear to the whole sum. In regard to the other, the general creditors of H. & C. have rights precisely equal to themselves, and the holders of the notes given by Austill to H. & C., if entitled to retain those against them, are invested with all their rights to the extent of the sum due by the account.

In our opinion, the case is one for equal distribution of the trust fund between the bill holders and the trustee under the deed, and consequently the general assignee of H. & C., in the relative proportions the bills and the account bear to the sum intended to be secured.

As the decision is not in conformity with this view, it must be reversed and remanded, for further proceedings.