## Case No. 796.

### In re BALDWIN.

[19 N. B. R. 52; 8 Cent. Law J. 186.]

District Court, D. Massachusetts. Dec., 1878.

BANKRUPTCY—PROOF OF DEBT BY SECURED SURETY—SUBROGATION.

[1. In America, when the principal is insolvent, a solvent surety, who holds collateral security for his indemnity, is a trustee of the security for the creditor.]

[2. A bank held a note of a bankrupt for $3,000, and made proof in full against the bankrupt estate. An indorser of the note, who held, as collateral security, stocks pledged to him by the bankrupt, afterwards paid the debt to the bank, and sold the stocks for $1,045. *Held*, that the surety should give credit for the amount realized from his security, and should take a dividend only upon the excess of the original debt as proved.]

In bankruptcy. The bank held a note for three thousand dollars, signed by bankrupt and made proof in full against his estate. An indorser of the note, who held, as collateral security, stocks pledged to him by the bankrupt, afterwards paid the debt at the bank, and sold the stock for one thousand and forty-five dollars. The register certified the question to the court, and no one appeared to argue it.

LOWELL, District Judge. The equity announced in Maure v. Harrison, 1 Eq. Cas. Abr. 93, that a creditor is to have the benefit of the securities given by the debtor to a surety, was assumed to be sound by Sir William Grant in Wright v. Morley, 11 Ves. 22, but was soon after overruled by Lord Eldon in Ex parte Waring, reported in three different books, (19 Ves. 345, 2 Rose, 182, 2 Glyn & J. 406.) Lord Eldon appears to have been afraid that the business of traders and bankers would be injuriously hampered if the relation of trustee and cestui que trust were

established in such cases; so that, as he said, a banker could never deal with the securities, even with the consent of the pledgor, until he had consulted with all the holders of the notes or bills. He held, however, in that case, that where both principal and surety were bankrupt, the same equity could be worked out by a sort of accident, that is to say: the assignee of the surety would have no right to use the pledged property as his general assets, because they were his only for indemnity; and the assignee of the pledgor could not take them without furnishing indemnity, and, therefore, to prevent a dead-lock between the two, the property must be applied to relieve both estates by paying the bills or notes pro tanto; not, however, by virtue of any equity which the bill-holders had, but as the only means of settling the two estates. This is the explanation of that case given by another learned lord chancellor, and is undoubtedly the true one. City Bank v. Luckie, 5 Ch. App. 776. This doctrine has been somewhat grudgingly admitted by the courts in England, and has been strictly limited to cases in which both parties were technically bankrupt or insolvent; that is, where their estates were being settled by the courts or in some equivalent mode; though a careful examination of the cases will show that the merchants of England have been disposed to take a larger view, and to administer the equity whenever the principal debtor has become insolvent, which is the American rule. See Powles v. Hargreaves, 3 De Gex, M. & G. 430; Ex parte Carrick, 2 De Gex & J. 208; Trimingham v. Maud, L. R. 7 Eq. 201; Ex parte Gomez, 10 Ch. App. 645; Ex parte Smart, 8 Ch. App. 220; Ex parte Prescott, 3 Deac. & C. 218; Ex parte Hobhouse, 2 Deac. 291; Inman v. Clare, Johns. Eng. Ch. 769; Vaughan v. Halliday, 9 Ch. App. 561. In this class of cases it has been uniformly held that when the creditors of this class had this incidental equity, or rather, when such an equity was cast upon them, they could prove against either estate only the balance remaining after the security was realized and distributed. Powles v. Hargreaves, 3 De Gex, M. & G, 436; Banner v. Johnston, L. R. 5 H. L. 157; Coupland's Claim, 5 Ch. App. 167; Leech's Claim, 6 Ch. App. 388; Ex parte Brett, Id. 838; Ex parte Joint Stock Discount Co., L. R. 19 Eq. 1, 10 Ch. App. 198.

This is an exception to the general rule that security need only be credited as against the estate which furnished it; but it appears to be sound. It would be inequitable to permit proof in full against the estate of the surety, when the very purpose of the pledge was to protect him to the extent of the value of the property. In this country the doctrine of Maure v. Harrison, 1 Eq. Cas. Abr. 93, has been adopted without the limitation annexed to it by Lord Eldon. It is held here that even a solvent surety is a trustee for the creditor when the principal is insolvent.

Moses v. Murgatroyd, 1 Johns. Ch. 119; Russell v. Clark, 7 Cranch, [11 U. S.] 97, per Marshall, C. J.; Bank of Auburn v. Throop, 18 Johns. 505; Vail v. Foster, 4 Const. [4 N. Y.] 312; Pratt v. Adams, 7 Paige, 615; Toulmin v. Hamilton, 7 Ala. 362; Paris v. Hulett, 26 Vt. 308; Eastman v. Foster, 8 Metc. [Mass.] 19; Rice v. Dewey, 13 Gray, 47; In re Jaycox, [Case No. 7,242;] Story, Eq. Jur. §§ 368, 499; 4 Kent, Comm. 163; 1 Lead. Cas. Eq. (3d Amer. Ed.) 163. The difficulty anticipated in Ex parte Waring [supra] has not been found to occur. No doubt the surety and principal together can deal with the security as they please, so long as both are solvent, and the creditors have not interfered. But after the insolvency of either the principal or the surety, the law of this country undoubtedly is, that the property is to be applied to the debt upon which the surety is bound. It has even been held that he may apply it after his own liability has been barred by lapse of time, or in some other mode. See Phillips v. Thompson, 2 Johns. Ch. 418; Eastman v. Foster, 8 Metc. [Mass.] 19. And a bankrupt surety, being a trustee, may recover the property in his own name. Kip v. Bank of New York, 10 Johns. 63.

It would seem to follow, from the foregoing considerations, that a creditor, who has this clearly recognized equity, might be obliged, upon some proper terms as to the costs being paid by the assignees, to resort to the property to the extent of its value, before proving his debt against the estate of the principal debtor. So is the argument of the late Judge Hall, in his very able and elaborate opinion in Ex parte Jaycox, [Case No. 7,242.] The decision, however, did not touch this point. In that case Judge Comstock was an indorser upon the notes of the bankrupts for a large amount, and held a mortgage conditioned for the payment of the notes and for his indemnity. The holders of the notes proved in full, and refused to modify their proofs, but, on the contrary filed a stipulation that they made no claim to the security: "It being understood that this release and surrender are not in any manner to release or affect the right of the said George F. Comstock to enforce a certain mortgage, etc." Judge Hall held that the creditors had the right to prove in full, waiving their security. What the resulting equities would be, between the surety and them, or between the surety and the assignees, was not before him, but he intimated an opinion upon it. Afterwards, the indorser being sued at law, the court of appeals held that he had no defense arising from this state of things. They intimate that there was neither law nor equity to release him, in whole or in part; but that appears to be beyond the point in issue. Merchants' Nat. Bank v. Comstock, 55 N. Y. 24. That decision is sound, because the assignees of Jaycox and Green were not parties to the

suit, and it did not appear that the indorser had been disturbed in his title to the security. If Judge Hall's opinion is right, the assignee might have filed his bill against the surety and the holders of the notes, to have it declared that they had waived their equitable right to security, and had thereby exonerated the surety pro tanto, and asking that the security might be given up and the holders be restrained from prosecuting the surety, excepting for the excess, if any, of their debt above the amount of the security. I have not seen the report of such a suit in that or any other case. If such a bill will not lie, the surety may indirectly have, as in that case he appears to have had, the benefit of the full proof, and of the security besides.

It has several times been held that the creditor may prove his debt in full, notwithstanding security held by a surety. Meed v. Nelson, 9 Gray, 55; Provident Inst. v. Stetson, 12 Gray, 27; Ex parte Braithwaite, 36 Law T. (N. S.) 520; same case on appeal, Ex parte Barnfather, Id. 841. It must be remembered, however, that the courts of bankruptcy had limited powers, and peculiar modes of proceeding. In a case somewhat similar in its principles to this, both the judges said that by admitting the debt to proof, they did not decide that the creditor could have a dividend on the whole amount. Ex parte Barham, 1 De Gex, M. & G. [1 Mont., D. & D.] 179. In another case they said, in both courts, that the right of the surety, if he should afterwards come in, was not, by any means, to be considered as decided by the admission of the full amount of the creditor's debt. Ex parte Braithwaite, 36 Law T. (N. S.) 520, 841. The cases most nearly resembling this, that I have found, are Ex parte Sherrington, 1 De Gex, M. & G. [1 Mont., D. & D.] 195, and Ex parte Mann, 5 Ch. Div. 367. In the former, the creditor had proved his debt in full, and the surety applied to sell his security, and the order was passed for a sale, and that the creditor might have the proceeds when he reduced his proof by an equivalent amount. In the latter, the surety's security was an assignment of certain debts due to the principal who afterward became bankrupt; by consent of the surety, the assignee collected these debts; and the register then ordered that he should apply the proceeds to pay the bills, although they had been proved in full by the holder. This order was affirmed on appeal. The holder not being before the court, they made no order for the reduction of his proof. The case seems to recognize an equity according to the American rule; that is, when only the principal was bankrupt. Ex parte Sherrington was not cited, and has never been overruled that I am aware of.

I think the law of England and of Massachusetts probably is, that when the court has jurisdiction of all the parties, so that complete justice can be done, the creditor must give credit for the security which the surety must apply towards his payment; but in the absence of the surety the creditor may, in the first instance, prove in full. The intent of the statute in permitting a surety who has paid the debt after the bankruptcy to prove it, is simply to put him on the footing of a creditor, which, by the old law, he could not be, unless he had paid before the bankruptcy. Now, if the surety had paid before the proceedings were begun, it is plain that he would be a secured creditor, and must give credit for the value of his security. Then, in subrogation to the creditor's proof, the surety should stand exactly as if he himself had proved. Whether we hold that the creditor has a distinct equity which chancery might require him to enforce; or that he may prove in full, leaving the assignee to establish and work out the resulting equities when the time comes for a dividend; or whether we simply say, the surety is now in court, and has the standing of a creditor who has been partly secured; the result is, that he should give credit for the amount realized from his security, and take a dividend upon the excess only of the original debt as proved, and it is so ordered.