## ANDREWS AND HALL, ADM'RS, v. BURNS, ADM'R.

1. A mortgage, though not recorded, is good as between the parties, and therefore binding binding on the administrator of the mortgagor, unless

some creditor of the mortgagor, without notice of the mortgage, has obtained a judgment, and acquired a lien on the mortgaged property.

Error to the Orphans' Court of Dallas.

RICHARD HALL was appointed administrator of the estate of William A. Hall, deceased, in October, 1844; and some time after obtained an order for the sale of the personal property, which sale was returned as made, on the 18th January, 1845. In May, 1846, he reported the estate insolvent, and the court so declared it. In July, 1846, Richard Hall died, and the plaintiffs in error became his administrators, and the defendant in error was appointed administrator *de bonis non* of the estate of W. A. Hall.

The plaintiffs in error having filed their account for a final settlement of their intestate, as administrator of W. A. Hall, the following items were contested: No. 30. The facts of which were, that W. A. Hall, being indebted to one Andrews, executed to him a mortgage on several slaves to secure its payment. The slaves included in the mortgage, together with others, were sold by R. Hall, the administrator, with the consent of the mortgagee, and produced more than sufficient to pay the mortgage debt, amounting to $933 82, which the administrator paid over to the mortgagee. The mortgage had never been recorded, and the creditors objected to the allowance of this item as a payment of a preferred claim, upon the ground that as the mortgage had not been recorded, it was no *lien* upon the property, and the court sustained the objection and held that the mortgage created no *lien* upon the property.

The administrators also claimed an allowance of an item of $57 95, under the following state of facts: R. Hall, as administrator of W. A. Hall, sent the cotton of the estate to a commission house in Mobile, which house made sale of the cotton, and transmitted him an account of sales, which is thus stated:

*Richard Hall, adm'r, &c. in account, &c.*

1844.

Oct. 1. To merchandise, bill of bagging and rope
rendered .... ...... ...... ..... ..... $36 19

23. To cash paid J. F. Connely ...... $396 88
" comm's advancing, 2¼ per cent.    9 92

1845.                                           ———— 406 80

Jan. 27. Interest to date ..... ..... ..... .....    9 43

                                                        ————
                                                        452 42

CR.

Jan. 21. By net proceeds 21 bales of cot-
ton ...... ..... ...... ...... $393 94

27. Interest to date ...... ........    53

                                               ———— 394 47

Cash received from R. Hall ..... .....   57 95

                                                    ————
                                                    $452 42

R. Hall, the administrator, had charged himself in the account current with the whole amount of the sales of the cotton, and now claimed credit for the $57 95, which he alledges to be the excess over the amount of the sales, and which he alledged he had not in fact received. This item of $57 95 is stated in the record to be, the amount of an account against the estate of W. A. Hall, retained by the commission merchant, and sent to the administrator the amount of the sales, less the said sum of $57 95; there was no evidence to show what the charge was for.

The court refused to allow either of these as credits, and the plaintiffs filed an exceptive allegation, and now assign these matters as error.

Evans, for plaintiffs in error.

Edwards, contra.

ORMOND, J.—The court erred in refusing to credit the administrator with the amount paid Andrews on the mort-

gage.    Although the mortgage was not recorded, it was nev-
ertheless binding on•the mortgagor and his administrator,
and the latter could not prevent a sale of the slaves for the
satisfaction of the debt secured by it.    The arrangement
which he made, to relieve the slaves from the *lien*, was bene-
ficial to the estate, they being worth more than the mortgage
debt, and was in effect the same, as if the mortgagee had
caused the sale to be made, and.paid him over the surplus.

The omission to register the mortgage, did not make it
void as to the creditors at large of the mortgagor, but only as
against such, who having no notice of the mortgage, have
obtained a judgment against the mortgagor, and obtained a
*lien* on the mortgaged estate, before the mortgagee by a sale,
had obtained the benefit of his mortgage.    [Ohio Life In. &
Tr. Co. v. Ledyard, 8 Ala. 866.]    Such appears to be the
case here.    None of these creditors of the mortgagor, appear
to have acquired a lien on the mortgaged estate, previous to
the mortgagee having obtained satisfaction of his mortgage ;
and as the administrator had not the power to prevent the
sale of the slaves included in the mortgage, he is entitled to
a credit for the amount due upon the mortgage paid by him,
to the mortgagee ; the effect of which, as already shown,
was precisely the same as if he had suffered the slaves to be
sold by the mortgagee.

The remaining question, growing out of the sale of the
crop of cotton, appears to have been misapprehended by both
parties, judging from the exception taken, and the ruling of
the court.    By referring to the account rendered by the com-
mission merchants in Mobile, it appears that the administra-
tor had obtained bagging and rope, and an advance of money,
in anticipation of the crop of the estate, which, with interest
and commissions, amounted to $452 42.    That the net pro-
ceeds of the crop, with interest to the time of stating the ac-
count, amounted only to $394 47, leaving a deficit of $57
95, which the administrator paid in cash.    This last item,
the administrator claimed to be allowed a credit for, having
charged himself in his account, as stated with the court, with

the whole amount of the sales of the cotton. This is clearly a mistake. He should have charged himself with $357 75, that being the net proceeds of the crop, after deducting the account for bagging and rope used about the crop, with interest from 21st January, 1845, and if not so entered, it must be corrected.

Let the judgment be reversed and the cause remanded.