# OHIO LIFE INSURANCE AND TRUST COMPANY v. LEDYARD;

### AND

# THE BANK OF MOBILE v. SAYRE & LEDYARD.

1. Under our statutes of registration, actual notice of the existence of a deed, is equivalent to the constructive notice afforded by registration.

2. The design of the statutes requiring registration, was to give notice, that creditors, and purchasers, might not be deluded, and defrauded, and as to all such, who have not notice in fact, the unregistered deed is void.

3. The creditors spoken of in the statute, are not creditors at large; but a creditor whose debt is liquidated, and a lien given on property by the debtor for its payment, is protected by the statute, against prior unregistered deeds, of which he had no notice.

4. One who purchases at a sale made by order of the Court of Chancery, foreclosing a mortgage, without notice of a prior unregistered deed, is a purchaser for a valuable consideration, within the meaning of our registry acts.

5. A creditor is entitled to the benefit of all pledges or securities, given to, or in the hands of a surety of the debtor, for his indemnity, and this, whether the surety is damnified or not, as it is a trust created for the better security of the debt, and attaches to it.

6. G., and S. & C., made a purchase of a piece of land of L., and executed a mortgage to secure the purchase money; afterwards, G. executed a deed

of trust, by which he conveyed an undivided half of the land, for the payment of certain debts, under which a sale was ordered by the Court of Chancery, the sale made, and the interest of G. purchased by one ignorant of the unregistered mortgage of L—Held, that L. might enforce his mortgage against the residue of the land, for the debt remaining unpaid, and that S. & C. must look to G. for their reimbursement.

Appeal from the Chancery-Court of Mobile.

THESE causes were heard together, and present the following state of facts.

In 1836, Ledyard sold to Sayre, Converse & Co., and Rufus Greene, a lot of land in Mobile, and received a mortgage to secure the payment of the purchase money, but failed to have it recorded. All of the purchase money has been paid, except about $2,000. After the forfeiture of the mortgage, Greene conveyed his interest to R. G. Gordon, who conveyed to Henry Meyers, who conveyed to James West. Converse conveyed his interest to Sayre, who conveyed to the Bank of Mobile, an undivided half of the lot, to secure debts due in 1839, and from thence to 1840. This mortgage was made in August, 1837. Ledyard filed his bill to foreclose the mortgage. Greene, Meyers, and Sayre, have been declared bankrupts, and P. T. Harris is the assignee.

The Bank of Mobile, by its answer, denies all knowledge of the existence of the mortgage of Ledyard, and alledges that it received the mortgage as a security for a debt due from Sayre, of $53,658 25, and that $26,390 75, is still due, for the payment of which the mortgage is an inadequate security.

A supplemental bill and bill of review was filed by Ledyard, alledging that the Ohio Life Ins. and Trust Co., hold one-half of the premises described in complainant's mortgage, and charged that it is subordinate to his right.

The Ohio Life Insurance and Trust Co. in its answer, claims to be a purchaser at a sale of the Chancery Court of Mobile, under the following state of facts: Rufus Greene in 1837, made a deed to Robert G. Gordon, to indemnify Robertson, Beal & Co. upon four notes, for the gross amount of upwards of $40,009, upon which they were endorsers, two of which had been dishonored, and the others were running to maturity: That the notes mentioned in the deed, were then held by C. B. & T. J. Mathews ;

That neither Mathews, Gordon, or Robertson, Beal & Co. had any knowledge of the mortgage of complainant, when the deed was executed : That upon a bill filed by Mathews, to subject the property to the payment of the notes, by the decree of the Court, the property was directed to be sold, and was purchased by the Company for $18,000, which received the register's deed therefor, on the 5th June, 1843. They deny all knowledge of the complainant's mortgage. Ledyard was not a party to the bill. It was admitted that Robertson, Beall & Co., and Greene, became bankrupts in 1842, and left no property for distribution.

The Bank of Mobile also filed a bill to foreclose the mortgage of Sayre & Converse.

Evidence was taken, which is sufficiently noticed in the opinion of the Court.

The chancellor was of the opinion, that the Bank had notice of Ledyard's mortgage, when it obtained the mortgage of Sayre, on the same property, and that the Ohio Life and Trust Company had not established their claim as *bona fide* purchasers, and decreed accordingly in favor of Ledyard.

These matters are assigned as error by the Bank, and the Life and Trust Insurance Company.

DARGAN, for the Life and Trust Company.—The allegation of the bill, is, that the Company were purchasers with notice of complainant's mortgage. Notice is denied, and it is admitted there was none. Upon the bill then, no decree could be had against the Company, which is not charged as a volunteer, or purchaser without consideration.

The purchase under the sale by the master, invested the Company with all the rights of a creditor, and the fact that money was not paid, but that the Company controlled the decree, is wholly unimportant.

The rule, that a conveyance is void as to creditors, means as to those creditors whose debts have attached on the property before notice. [10 Leigh, 497 ; 1 Pick. 164 ; 1 Metcalfe, 202 ; 4th Halstead, 193.]

PHILLIPS, for the Bank of Mobile, contended—That the Chancellor erred in his conclusions from the proof in the cause, which he insisted did not authorize the inference that the Bank knew of

Ledyard's mortgage, when it obtained the mortgage from Sayre, and examined the testimony at some length.

He further contended, that the "notice" spoken of in the act of 1828, was notice by registration, and that no other kind of notice was sufficient.

He also argued, that the words *without notice*, in the statute, applied to purchasers only, and not to creditors—that the design of the statute was only to assert the rule in equity. [4 Rand. 208.] That the Bank was a creditor, because it relinquished a security for a pre-existing debt, which was tantamount to a new credit. [2 Paige, 300 ; 4 Id. 215.]

Ledyard's mortgage was such an instrument, as the act of 1828 required to be recorded. [4 Ala. 473.]

CAMPBELL, contra.—He examined at some length, the testimony, and insisted that it warranted the conclusion drawn by the chancellor. [7 Porter, 182.]

He contended that the plaintiffs in error were not creditors ; that where one obtains land in payment of a debt, he is a purchaser and not a creditor. [2 Leigh, 84.]

A creditor within the purview of the act, is one who has obtained a specific lien by action at law upon the property. [10 Leigh, 499.]

A mortgage of land given to secure a debt, as is the case here, does not fall within any of our statutes of registration, except the act of 1823, [Clay's Dig. 154, § 18,] which contains no provision in favor of creditors. The act of the 15th January, 1828, refers only to absolute deeds, and the act of the same session passed the 11th of the same month, only to deeds of trust. The design of the act was to suppress frauds by embarrassed debtors. Mortgages on real estate are the approved securities between solvent persons.

A failure to record a deed under the act of 1823, avoids a mortgage only as against a purchaser. [2 Stewart, 488 ; 1 Paige, 125 ; 2 Id. 217 ; 6 Id. 316 ; 11 G. & J. 314.]

The Ohio Life and Trust Co., and the Bank, are not purchasers within the meaning of the statute, as they took the property in payment of debts. The legal title is in Ledyard, and he has equal equity, and in the absence of the statute, must prevail. [6 Ala. 639 ; 20 Johns. 647 ; 10 N. H. 266 ; 13 Wend. 605 ; 3 B,

Mon. 636; 11 S. & R. 388; 4 Paige, 215; 5 Id. 644; 6 Ib. 310; 11 Wend. 534; 1 Dev. 103.]

Mathews had, at no time, an interest superior to that of Ledyard; he was not a party to the deed, though its object was the payment of his debt. It was a voluntary conveyance, without valuable consideration. Before the decree, he had no right to the land. What did he get by the decree? If he, or Gordon the trustee, had not the legal estate, it did not pass by the master's sale; the purchaser at the sale, took their interest, and no more. [1 Ala. 727; 20 Wend. 260.]

The receipt on the master's docket, is not the payment of a valuable consideration. The security was not given to Mathews; he did not contract for it, and Robertson & Beal, to whom it was given, were at the time, discharged bankrupts, without any estate to distribute. [6 Hill, N. Y.]

ORMOND, J.—The controversy in this case, arises between a mortgagee of land, who failed to record his mortgage, and others claiming the same lands by subsequent conveyances from the mortgagor, without notice of the previous mortgage.

The unregistered mortgage was made by Sayre, Converse & Co., to Ledyard, in April, 1836, and the mortgage of the same parties to the Bank of Mobile, in August, 1837. The President of the Bank has been examined as a witness, and admits that the Bank, after it obtained the mortgage, and possibly at the time, knew there was a previous incumbrance on the property, but does not know whether it was the mortgage of Ledyard, or some other incumbrance, of which the Bank had notice. Mr. Sayre was also examined, and says that he is under the impression, the officers of the Bank knew of the mortgage. That they did have knowledge of its existence, is, in our judgment, the necessary presumption from their subsequent conduct.

It appears that Mr. Sayre, by the consent of the officers of the Bank, applied the rent of the mortgaged premises in discharge of Ledyard's mortgage, from 1838 to 1841, and was only prevented from extinguishing the incumbrance by this process, by the accidental falling down of the warehouse erected on the land, which made it necessary to employ the rents in its reconstruction. This conduct on the part of the Bank, is a concession of the prior right of Ledyard, and is indeed inexplicable on any

other hypothesis. It is probable, that the Bank did not know that the prior mortgage had not been recorded, as it appears from the testimony of Mr. Sanford, its President, that as soon as it was ascertained that the mortgage had not been recorded, the permission to pay over the rent to Ledyard was withdrawn; but that its existence was known by the officers of the Bank, at the time the mortgage of Sayre and Converse to the Bank was made, is, in our opinion, the necessary inference from the conduct of the Bank, taken in connection with the facts proved.

It is now contended, that no notice of the existence of a deed required by law to be recorded, is available, but the notice afforded by its registration. We think it perfectly clear, that both the acts of 1823, (Clay's Dig. 154, § 18,) and the act of 1828, (Ib. 255, § 5,) under one of which this deed must come, evidently contemplate, that actual notice shall be equivalent to the constructive notice afforded by the registration of the deed. The language admits of no other interpretation; the whole object and design of the statutes being to give notice of the existence of the deed.

We come now to the consideration of the more difficult question, whether the Ohio Life Insurance and Trust Co., are creditors, or purchasers, for a valuable consideration, it being admitted that it had no notice, either actual or constructive, of Ledyard's prior incumbrance.

Rufus Green, who claimed to be the owner in fee, of an undivided half of the same lot, covered by the unregistered mortgage of Ledyard, executed a conveyance of the same, to R. G. Gordon, upon the following trust. Green was the maker of four promissory notes, two for the sum of $10,600, each due at the date of the deed, and two others for $10,900 each, payable eighteen months after date, but not then due. Upon these notes, Robertson, Beal & Co. were indorsers, and to indemnify them as indorsers, the deed was made, and upon the non-payment of the notes within seventeen months from the date of the deed, the trustee was authorized, and required, to sell a sufficiency of the property conveyed by the deed, to pay off and discharge the trust. It does not appear from the deed, who were the holders of the notes, but by the testimony of Green, it appears that T. C. Mathews held them at that time. Green, and Robertson, Beale & Co. became bankrupt, and were discharged in 1842, leaving

no property to be divided among their creditors. The Messrs. Mathews filed a bill in Chancery, to obtain the benefit of the deed made by Green, and obtained a decree for the sale of the property. A sale was made under the decree, and in 1843 the land was purchased by the Ohio L. I. & T. Co., which sale was afterwards confirmed.

It is now strenuously urged, that the equity of Mathews before the decree, and under the deed, was not greater than that of Ledyard, who was clothed with the legal title. That under the sale made in virtue of the decree, no title passed, which was not previously vested in the party against whom the decree was obtained. That *caveat emptor* is the rule at a Master's sale.

In the case of Toulmin v. Hamilton, 7 Ala. Rep. 367, which, upon this point, is in principle identical with this, we had occasion to consider this question. It was there, upon great consideration, held, that when a deed of trust was given to indemnify an accommodation acceptor, the holders of the paper might resort to the trust property for the payment of the paper when dishonored. That is the precise predicament of this case. The deed of trust was executed to secure, or indemnify, Robertson, Beale & Co., as indorsers of certain notes, which it appears by the testimony of Green, had previously been given to T. & C. Mathews. The rule as established by that case, is, that the creditor is entitled to the benefit of all pledges, or securities given to, or in the hands of the surety, for his indemnity, to be applied to the payment of the debt. It does not in the slightest degree vary the case, that the indorsers have become bankrupt, and have no estate for distribution. The right of the holder to the benefit of this security, does not depend upon the liability of the surety to be damnified ; it is because it is a trust created for the better security and protection of the debt. It therefore attaches to the debt, and those interested in it, may affirm the trust, and enforce its performance. [Moses v. Murgatroyd, 1 John. C. 129.] It is also to be observed, that the right to sell vested in the trustee, did not depend upon the fact that the indorsers of the notes were compelled to pay upon their indorsement, but the trust was, to sell if the notes were not paid by Green the maker, in seventeen months, and to pay and discharge the notes.

It is certainly true, as contended, that upon a sale by the Master, no title is acquired which has not been put in litigation, and

adjudicated by the Court, the parties in interest being before it, but we do not perceive, how this admitted principle affects this question. When this deed of trust was made, Green had the legal title to an undivided half of the lot ; upon this there was an incumbrance in favor of Ledyard, but of its existence, neither the trustee, nor any of the beneficiaries had notice, either actual or constructive. It is therefore, as to them, as if it never had existed. In the language of the statute, it is " void," and being void, no right can be derived from it, prejudicial to any right secured by the deed of trust, which though *posterior* in point of time, being received in ignorance of the existing unregistered incumbrance, is by the statute *prior* in right.

It is further urged, that although the payment of the debt to Mathews, was the object of the deed, it was a voluntary conveyance, without valuable consideration, within the meaning of the statute.

This objection has, to some extent been anticipated. It may be conceded that the "creditors" spoken of in the act of 1828, are not creditors at large, for in no just sense can a creditor whose debt is liquidated, admitted to be just, and a *lien* given by the debtor on a particular fund, for its payment, be considered a creditor at large. He is rather to be considered a purchaser, of which the debt forms the consideration. The case of Liggat, et al. v. Morgan, 2 Leigh, 841, is a direct authority, that such a creditor is to be considered a purchaser, within the meaning of the statute of the 13 Elizabeth. So in Coffin v. Ray, 1 Metcalfe, 214, it is said, " the attachment of real estate is considered as in the nature of a purchase, and the attaching creditor affected with notice of a prior conveyance, in the same manner as a purchaser." To the same effect is Priest v. Rice, 1 Pick. 164, and Bryan v. Cole, 10 Leigh, 500. The plain and obvious design of our statute, in requiring registration, is, to give notice that creditors, and subsequent purchasers may not be deluded or defrauded ; and as to all such, who have not notice in fact, the unregistered deed is void; any other decision would make the provision in favor of creditors utterly fruitless.

But if we were to consider the prior unregistered incumbrance as an equitable lien, and equal in dignity with the lien of a creditor subsequently obtained on the same property, certainly the equity of the creditor is superior, after he has obtained a decree for the en-

110

forcement of his lien, and has actually enforced it, by sale. In such a case it cannot be doubted, that the purchaser would have, with the legal title, the superior equity, as he would be literally a purchaser for a valuable consideraiion without notice of the prior equity. That is this case. The Ohio L. I. & T. Co. purchased at the sale, made under the decree. It is true, it does not appear that the Messrs. Mathews have received the money, but it does appear that the sale was confirmed, and the title has been made to the company, and that the costs of the suit have been paid. This is in effect, an admission by them, of the payment of the money, as on no other hypothesis can the fact of their permitting the sale to be confirmed, be explained. Nor is this question put in issue by the bill. It is not alledged that the Life Insurance and Trust Co., is not a *bona fide* purchaser, but that it was a purchaser with notice of the prior unregistered deed. The decree in favor of the Messrs. Mathews, is not before us; their demand, to satisfy which the decree was made, was for upwards of forty thousand dollars, and as the maker and indorsers of the notes are all certificated bankrupts, without any estate to divide, as is admitted upon the record, the sale of this property was their only means of reimbursement, if indeed they were not, as is most probable, trustees merely for the Life I. & T. Co.

The cases cited by the counsel for the defendant in error, from Paige & Wendell, to be found on his brief, are based upon a principle which does not obtain in this State—that the payment, or discharge of a pre.existing debt, is not a valuable consideration, in the same sense, as paying money, or parting with property would be. See also, Coddington v. Bay, 20 Johns. 637, where this principle is asserted in reference to negotiable paper. This doctrine is controverted in Swift v. Tyson, 16 Peters, 1, where this question was elaborately considered, and the New York authorities denied to be law, and to the same effect is the decision of this Court in the Bank of Mobile v. Hale, 6 Ala. Rep. 639. The analogy between negotiable paper, and the question here discussed, appears to be perfect, and is so considered in the New York cases. Upon the whole, we are satisfied, that there is error in the decree, so far as it determines that the Ohio Life Insurand and Trust Co. were not purchasers for a valuable consideration.

The view here taken, renders it unnecessary to determine the

question, whether a mortgage of lands is to be registered under the act of 1823, (Clay's Dig. 154, § 18.) as maintained by the counsel for the defendant in error, or under the act of 1828, (Ib. 255, § 5,) as contended by the counsel for the plaintiff in error, as we hold that the Life I. & T. Co. were *purchasers* for a valuable consideration, and therefore within the saving of both statutes. The decree of the Chancellor must be reformed, so as to subject the undivided half of the lot claimed by the Bank, to the whole amount of Ledyard's mortgage. The costs of this Court to be equally divided between Ledyard and the Bank of Mobile. The costs of the Court below to be paid out of the fund. Let the cause be remanded for further proceedings.

ORMOND, J.—A motion has been made for a rehearing in this case, and modification of the decree. The ground of our decision, that the Bank of Mobile had notice of Ledyard's mortgage, when it obtained the mortgage of Sayre & Converse on a portion of the same land, is, that the Bank has not attempted to repel the inference arising from their permitting the rent of the mortgaged estate to be applied to the payment of Ledyard's debt. That the persons having the management of the Bank, should permit this appropriation to be made for several years, without inquiry, is on its face incredible. It is then, material to consider, that no attempt is made at explanation, that this yearly appropriation was permitted by mistake. The only rational inference is, that the only mistake the Bank was under, was in supposing that the mortgage was recorded.

As to the decree. It is insisted, that Ledyard having lost the right to look to the undivided half of the mortgaged estate originally owned by Green, he can only subject the residue of the estate to the payment of half the debt now remaining due on the mortgage.

By the mortgage to Ledyard, by Sayre & Converse, and Green, the former acquired a right to satisfaction of his debt, out of all and every part of the land. In what way has this right been impaired? The failure on his part to record the mortgage, certainly could not have this effect, because he was under no obligation to record it. This may have been necessary to protect him against creditors, and subsequent purchasers without notice, but as between the parties to it, it is as valid to all intents and

purposes, as if recorded. If by the omission to put the mortgage on record, its lien is lost on a part of the land, it is not caused by Ledyard, but by the improper conduct of Green, in again encumbering the land, without giving notice of the prior mortgage, and if the whole burthen is thrown upon the other half of the land, it is not the fault of Ledyard, who has done no act calculated to impair his rights.

If then by the conduct of Green, the whole burthen is cast upon Sayre & Converse, or those representing them, they will have the right to call upon Green to reimburse them. This point was in effect decided at the present term in the case of Andrews & Brothers v. McCoy.