# Daniel v. Hunt.

*Bill in Equity by Wards, to enforce and foreclose Mortgage given by Guardian to Surety on Official Bond.*

1. *Subrogation of creditor to rights of surety.*—All pledges or securities, given by the principal debtor to his surety, for his indemnity, are regarded as a trust fund for the payment of the debt; and the creditor is entitled to be subrogated to all the rights thereby conferred on the surety, whether the latter has been damnified or not; but he has no greater rights than are conferred on the surety, and can not enforce a mortgage, or other instrument, given merely to save the surety harmless against a contingent liability or loss which has not happened,—at least, without the intervening insolvency of both the principal and the surety.

2. *Same; mortgage construed as intended for indemnity of surety, and enuring to benefit of creditor.*—A mortgage, executed by a guardian to the surety on his official bond, conditioned that he " shall manage said guardianship in the terms of the law," and, if he " fails to comply with the terms of the law in the said guardianship, and cause loss by the said " surety, authorizing him to sell, and to apply the proceeds " to the payment of said loss," enures to the benefit of the ward, and may be enforced by him, on failure of the guardian to pay the amount adjudged against him on final settlement of his accounts.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 23d May, 1883, by John H. Daniel and his sister, Mrs. Elizabeth Wells, against Richard H. Hunt and others ; and sought to enforce and foreclose, for the complainants' benefit, a mortgage executed to said Hunt by one Martin C. Burnett, who was then complainants' guardian. The mortgage, a copy of which was made an exhibit to the bill, was dated the 10th November, 1862, and purported to be given " in consideration that said R. H. Hunt did, on the 10th October, 1862, sign a certain bond as guardianship for the person and property of John H. and Elizabeth Daniel, as security for the said Martin C. Burnett as guardian for the said minors,

[Daniel v. Hunt.]

and for the further consideration of one dollar in hand paid." The condition of the mortgage was in these words : "*Provided* I, the said Martin C. Burnett, shall well and truly manage said guardianship in the terms of the law, and pay the legal expenses of these presents, then this obligation to be void; but, if I, the said Martin C. Burnett, fail to comply with the terms of the law in the said guardianship, and cause loss by the said R. H. Hunt, I, by these presents, authorize the said R. H. Hunt, his heirs and assigns, to seize upon the said tract or parcel of land, and sell it for the highest price he may be able to get, and apply the proceeds to the payment of said loss and expenses, as aforesaid." Said Burnett's official bond as guardian, a copy of which was also made an exhibit to the bill, was dated October 22d, 1862, and conditioned that he "shall well and truly perform all duties which are or may be by law required of him as such guardian." The bill alleged that said Burnett resigned the guardianship in December, 1863, and filed his accounts and vouchers for a final settlement; and that a decree was rendered against him by the Probate Court, on final settlement of his accounts, on the 11th May, 1864, by which it was ascertained that he owed his said wards a balance of $1,125.31; and it was further ordered, "that whenever any person comes forward and qualifies as the law directs as such guardian, execution shall issue against the said Martin C. Burnett, and in favor of said guardian, for the use of said wards, for said sum of $1,125.31." The bill alleged, also, that no portion of this decree had ever been paid; that no other person was ever appointed guardian of the complainants; that said Burnett afterwards removed from Alabama, and died in Georgia, intestate, and insolvent, leaving no property whatever in Alabama. On these averments, the bill prayed that the amount due to the complainants by their deceased guardian be ascertained by the decree of the court; that the mortgage "be declared a lien and security in their favor, for the sum ascertained to be due them, on the lands therein described; that a foreclosure of said mortgage be decreed for their benefit," and for other and further relief under the general prayer.

The defendants demurred to the bill, assigning the following as one ground of demurrer: (2.) "Because the bill shows that said mortgage to Hunt was one of indemnity to him as the alleged surety of said Burnett as guardian of complainants, and not to be foreclosed until he had sustained or suffered loss; and it does not anywhere aver or show that said Hunt had ever been damaged, or sustained any loss, and does not make out a proper case of subrogation." The chancellor sustained the demurrer, on this ground; and his decree is now assigned as error.

[Daniel v. Hunt.]

JNO. M. CHILTON, for appellant, cited *Ohio L. & T. Co. v. Ledyard*, 8 Ala. 872; *Neal's Adm'r v. McMullen*, 60 Ala. 552; *Forrest v. Luddington*, 68 Ala. 1; *Saffold v. Wade*, 51 Ala. 214.

WM. H. BARNES, and BULGER, OLIVER & GARRETT, *contra*, cited Brandt on Suretyship, 384, § 284; *Osborne v. Noble*, 46 Miss. 449; *Homer v. Savings Bank*, 7 Conn. 478; *Van Orden v. Durham*, 35 Cal. 136.

SOMERVILLE, J.—The broad doctrine prevails in this State, touching the principle of subrogation, that a creditor is entitled to the benefit of all pledges or securities, given to, or in the hands of a surety, for his indemnity. And this is the rule, whether the surety has been damnified or not, inasmuch as such securities are generally regarded as a *trust* created for the payment of the debt.—*Colt v. Barnes*, 64 Ala. 108; *Saffold v. Wade*, 51 Ala. 214; *Forrest v. Luddington*, 68 Ala. 1, and cases cited.

While this principle is not denied, it is insisted, on the part of the appellees' counsel, that where a surety holds a mortgage, or other security, merely for his own personal benefit or indemnity, as distinguished from the idea of creating a security for the debt, or of providing means for its payment, the creditor is not entitled to any greater rights or remedies than the surety; and that the latter's indemnity is not available to the creditor, unless in the event of the insolvency of both the principal and the surety, which originates a new equity in favor of the creditor. The correctness of this principle may be conceded, in view of the fact that the rights of the creditor must necessarily be measured by those of the surety, and being wrought out through the equity of subrogation, which is but the substitution of one person in the shoes of another, they can be neither increased nor diminished by such act of transfer.—Sheldon on Subrog., §§ 157, 160, 162; Brandt on Sur., §§ 282–85; *Forrest v. Luddington, supra*.

So, the rights of the surety must be determined by the terms of the instrument which creates the indemnity. If the mortgage, or other security, is not given to secure the debt, or to provide a fund for its payment, but merely to save harmless from a contingent liability or loss, the contingency must happen, or the loss be sustained, before a right arises in favor of the creditor to the indemnity,—at least, without the intervening insolvency of both the principal and the surety. In *Osborne v. Noble*, 46 Miss. 449, we find the general rule succinctly stated as follows: "Where the contract is for the personal benefit of the surety, in opposition to the idea of a pledge for the debt,

[Daniel v. Hunt.]

or providing means for its payment, the creditor can claim only such rights and remedies as the surety had. If he has not been damnified, and the conditions of the mortgage, or other contract of indemnity, are unbroken, the surety himself could assert no remedy; nor could the creditor, claiming through him, and in his stead, have substitution."—*Bibb v. Martin*, 14 S. & M. (Miss.) 87; Sheldon on Subrog. §§ 157, 160; Brandt on Sur. § 284.

The mortgage in the present case was executed by the principal in a guardian bond, as an indemnity to the defendant, who was his surety. The condition of the mortgage is, that the mortgagor, as guardian, should well and truly manage his guardianship " in terms of the law"; by which we are to understand, that he would faithfully discharge all the duties of his office which were imposed upon him by law. This included, of course, the payment to his wards of any balance due them on the final settlement of the guardianship, which is shown by the bill to be something over eleven hundred dollars.

The mortgage further provides, that if the guardian, Burnett, failed "to comply with the terms of the law in the said guardianship, and caused loss by the said R. H. Hunt [the surety]," the latter was authorized to take possession of the land mortgaged, and sell the same for the payment of such loss, and certain expenses. It is objected by demurrer, that the instrument contemplates an actual loss by the surety incurred by his payment of the debt; and that it was therefore intended, not as a security for the payment of the debt, but merely for the personal benefit of the surety himself, upon a contingency which has not yet happened. We do not so construe the instrument. The condition of the mortgage was broken, when the guardian failed to pay over to the complainants the balance which he owed them on final settlement. When this happened, there was, in legal contemplation, a loss to the surety, who was personally bound for the payment of the debt. It is plain that the word " loss," here, means nothing more than legal damage, detriment, or forfeiture. We can see nothing in the language of this instrument, which rebuts the view that the security given was intended to attach to the debt as an accessory to it, being held in trust by the mortgagee for the benefit of the creditor, rather than for his own personal indemnity upon the contingency of his paying the surety debt.

It was not necessary that the debt should have been reduced to judgment, or that the creditors should have exhausted their legal remedies, before becoming entitled to the equity of subrogation. The whole equity of the bill is based upon the theory of enforcing a trust, which is claimed to enure to the benefit

[Littleton v. Clayton.]

of the complainants by subrogation.—*Saffold v. Wade*, 51 Ala. 214.

The chancellor erred in sustaining the demurrer to the bill; and his decree is reversed, and the cause remanded.