ELIZABETH J. STEWARD, Administratrix, in equity,

*vs.*

WILLIAM H. WELCH.

Somerset.     Opinion February 13, 1892.

*Mortgage. Surety. Subrogation. R. S., c. 90, § § 2, 12.*

If a mortgage is given to secure negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holders of the notes.

In 1871, A bought land of B for fourteen hundred dollars and gave him a mortgage to secure the purchase money. As a part of the same transaction, C, plaintiff's intestate, advanced one half of the purchase money, taking therefor two notes signed by A, as principal, and B, as surety. The mortgage was conditioned to pay B seven hundred dollars and the two notes held by C. A occupied the premises for several years, and prior to 1882, paid the interest and part of the principal of the note held by B, and part of the interest on the two notes held by C. March 23, 1882, B foreclosed his mortgage by taking possession, the foreclosure being perfected March 23, 1885. March 1, 1883, B in consideration of six hundred dollars, assigned to the defendant, who had notice of the equities of C, his mortgage and note of seven hundred dollars, but did not assume in this assignment to transfer to the defendant any rights secured to C by the mortgage; and the two notes held by C still remained unpaid. In 1887, C sued B on these two notes and obtained judgment by⸱compromise for three hundred dollars, which B paid and was received by C upon the mortgage debt with an agreement that C's right to enforce the balance (then outlawed against B) upon the property should not be impaired.

*Held,* that the equities between the plaintiff and defendant are the same as they were between B and C. To uphold the equities, the defendant must be regarded as holding the property in trust for the plaintiff in the proportion which the amount due C's estate sustains to the whole amount due on the mortgage; and the plaintiff is entitled to that part of the property which is in proportion to her debt, and also of the rents and profits received by the defendant in excess of disbursements, in the same proportion.

ON REPORT.

Bill in equity to enforce a trust under a mortgage, heard on bill and answer.

Besides the general prayer, the bill prayed that "a master may be appointed by said court, and an account taken of the profits and income received by said Welch from said mortgaged property since he took possesssion thereof; that said Welch may be required by the judgment and decree of said court to pay to your oratrix the amount due upon the note aforesaid, or such part of said amount as said court shall declare to be justly due her out of said rents and income; and that said Welch may be required to assign and deliver to her the mortgage aforesaid, or one half thereof, or such other fractional part thereof, as the court shall adjudge and order; or that said mortgaged property may be decreed by this court to be sold, and the proceeds applied to the payment of her said notes."

*D. D. Stewart*, for plaintiff.

*D. F. Davis and V. A. Sprague*, for defendant.

If by any possibility the plaintiff has any rights whatever after this lapse of time, they should be reached not by a sale of the property, but by some method, by which the defendant can be protected in all his rights as well as the plaintiff. But the plaintiff's claim has slept too long.

The principal creditor is not entitled to the benefit of a mortgage given to a surety until the liability of the latter is fixed. If the indorser is discharged by the laches of the creditor he cannot claim the benefit of the mortgage. A mortgage given to indemnify a surety or indorser does not in the first instance attach to the debt; and whatever equity may arise in favor of the creditor with regard to the security arises afterwards, and in consequence of the insolvency of the parties primarily holden for the debt. Until this equity arises the surety has a right, in equity as well as at law, to release the security. Even after such insolvency, the mortgagee may surrender the security if he does it in good faith and before any claim is made upon him for it. Jones Mort. § § 385, 387 and cases cited.

Though Knowles became insolvent, Sprague has not, and payment could have been enforced against him by Steward at any time until the statute of limitations intervened.

WHITEHOUSE, J. This case was heard on bill and answer. In 1871, B. F. Knowles purchased of V. A. Sprague the mill property at Southard's Mills in Corinna, for fourteen hundred dollars, and gave him a mortgage to secure the purchase money. As a part of the transaction, however, Stephen Steward, the plaintiff's intestate, advanced one half of the purchase money and received therefor two notes for three hundred and fifty dollars each, payable in one and two years respectively, signed by Knowles, as principal, and Sprague, as surety. The condition of the mortgage was, therefore, to pay a note of seven hundred dollars, payable directly to Sprague in three years from its date, and also to pay the two notes above named held by Steward for three hundred and fifty dollars each, signed by Knowles, as principal, and Sprague, as surety. Knowles occupied the premises for several years after his purchase; and prior to 1882 he paid the interest on the Sprague note and a portion of the principal, and also a part of the interest on the Steward notes. But, March 23, 1882, Sprague took possession of the property in order to foreclose the mortgage for condition broken, and a foreclosure was perfected March 23, 1885. In the meantime, March 1, 1883, in consideration of six hundred dollars Sprague assigned and transferred to the defendant Welch, the mortgage in question and the note for seven hundred dollars held by him and secured by the mortgage. The two notes for three hundred and fifty dollars each, signed by Sprague as surety, still remained unpaid and outstanding in the hands of Steward, and Sprague did not assume to transfer to the defendant any rights secured to Steward by the mortgage. On the contrary, he informed the defendant of the relations sustained by Steward to the mortgage and the property described; and although in addition to the assignment of the mortgage and his own note he gave the defendant a deed of warranty of the same premises, the mortgage in question was expressly excepted from the operation of the covenants. In 1887, Stephen Steward brought suit against Sprague as surety on one of the notes for three hundred and fifty dollars. The statute of limitations was invoked in defense, but, by way of compromise, Steward was allowed to

take judgment against the surety for the sum of three hundred dollars. This was paid by Sprague and received by Steward in reduction of the mortgage debt, with a written agreement that Steward's right to enforce the balance against the property should not be impaired. The second note for three hundred and fifty dollars was admitted to be outlawed as to Sprague, the surety.

The defendant, Welch, claims in answer that the premises are now held by him in fee simple, free from all claims under the mortgage, and no longer charged with a trust in favor of any person. But this result would be manifestly inequitable and the position is, therefore, untenable.

On the other hand, the plaintiff contends that the mortgage was given to Sprague primarily as one of indemnity, and although it included a debt due and payable to the surety himself, the mortgagee must be regarded in the light of a trustee for the principal creditor with respect to an indemnity, and as between himself and a principal creditor, the latter is entitled to be first paid out of the proceeds of the mortgage. But due regard to the elementary principle, that equality is equity, will require a material modification of the plaintiff's contention.

It is familiar law that, as between mortgagor and mortgagee, the title is vested in the mortgagee immediately upon the delivery of the mortgage, and the mortgagee is regarded as having all the right of a grantee in fee subject to the defeasance. *Gilman v. Wills*, 66 Maine, 275; R. S., ch. 90, § 2. But the equitable theory of mortgages so far prevails in this State, that the mortgage is regarded primarily as a security; the debt is the principal fact and the mortgage is collateral thereto; and the beneficial interest which it confers on the mortgagee may, therefore, be equitably transferred by an assignment of the debt without a conveyance of the land itself. 3 Pom. Eq. § § 1181, 1182. By sec. 12, chap. 90, R. S., "land mortgaged to secure payment of debts, . . . and the debts so secured are on the death of the mortgagee, or person claiming under him, assets in the hands of his executors or administrators." In *Jordan v. Cheney*, 74 Maine, 361, it is declared to be the settled law of

this State that " one who takes a mortgagee's title holds it in trust for the owner of the debt, to secure which the mortgage was given. If a mortgage is given to secure negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes. . . . If the mortgage is duly recorded, the record is notice to all the world of the character of the mortgagee's title, and one taking title from or through him will obtain only a mortgagee's title and be chargeable with notice that the notes are liable to be transferred, if they are not already transferred, and that he must hold the estate in trust for the holder of the notes to secure which the mortgage was given, whoever that holder may be." See also *Moore* v. *Ware*, 38 Maine, 496 ; *Buck* v. *Swazey*, 35 Maine, 41 ; *Johnson* v. *Candage*, 31 Maine, 28. In the last named case a mortgage of real estate was given to secure payment of five notes, one of which was indorsed and transferred to the plaintiff. The mortgage, with three other notes which remained unpaid, was assigned to the defendant, and during his ownership the proceedings for foreclosure, commenced by his predecessor in title, were perfected. The court said : "Mortgagees or assignees must hold the premises mortgaged for the benefit of the owners of the debts ; for if it were otherwise their debts would be discharged upon a foreclosure so far as the value of the land might extend, while nothing would be paid to them, and the mortgagee or assignee would obtain a title to the premises without having paid a consideration for them. It results that the defendant, Candage, must be considered as holding the premises assigned to him in trust for the plaintiff in the proportion which the amount due on his notes bears to the whole sum due on the mortgage. There does not appear to be any just grounds for requiring the defendants, or either of them, to pay the plaintiff's note ; for the entry to foreclose and the consummation of the foreclosure was beneficial to the plaintiff. The holders of the respective notes have an equitable interest in the land in proportion to the amount due upon them. The plaintiff can equitably claim that part of the land which is in proportion to his debt,

and he is entitled to the rents and profits, exceeding the disbursements which the defendants have obtained from the mortgaged premises, in the same proportion."

In *Eastman* v. *Foster*, 8 Met. 19, it was held that a mortgage given by the principal maker of a promissory note to his surety, conditioned that the principal will pay the note and save the surety harmless, creates a trust and an equitable lien for the holder of the note ; and even after the sureties' liability to the holder of the note is barred by the statute of limitations, he holds the property subject to such trust and lien ; and after he has obtained an absolute title to the property by foreclosure, the same trust still attaches to it.   See also 1 Jones on Mortgages, § 387, and authorities cited.

The principles involved in these cases must be held decisive of the case at bar.   The equitable interest of Stephen Steward was essentially the same as it would have been if the two notes of three hundred and fifty dollars each payable to him had originally been made payable to the order of Sprague, had been thus described in the mortgage, and for a valuable consideration had been indorsed by him to Steward before maturity.   The equitable lien binds the property after an assignment of it to one who has notice of the trust.   *Rice* v. *Dewey*, 13 Gray, 47. The defendant was not only chargeable with the notice afforded by the plain terms of the mortgage, but he was further explicitly informed by Sprague of the relations sustained by Steward to the mortgage ; and the debt given to him by Sprague was expressly made subject to the rights of Steward.   It is, therefore, obvious that the defendant is in no better condition in equity than the assignor or grantor under whom he claims ; and the equities now subsisting between the plaintiff and the defendant are precisely the same as were those between Steward and Sprague.   To sustain and enforce these equities, the defendant must be regarded as holding the property described in the mortgage in trust for the plaintiff in the proportion which the amount due on the notes payable to Stephen Steward sustains to the whole amount due on the mortgage, and the plaintiff is equitably entitled to that part of the property which is in proportion

to her debt, and also to the rents and profits which have been received by the defendant in excess of the disbursements in the same proportion.

The case must be submitted to a master with instructions to ascertain and report the sums due upon the several notes secured by the mortgage and the amount of the rents and profits, and also the disbursements. Upon the acceptance of his report a decree is to be rendered in accordance with this opinion.

*Decree accordingly.*

PETERS, C. J., LIBBEY, EMERY, FOSTER and HASKELL, JJ., concurred.