DYER *v.* JACOWAY.

Opinion delivered June 24, 1905.

| | |
|---|---|
| 76 | 171 |
| f86 | 297 |

1. SURETY—RIGHT TO RELEASE SECURITY.—Where a mortgage is executed by a debtor to indemnify a surety and also to secure the payment of the debt, the creditor has an interest therein which the surety cannot release. (Page 176.)

2. SAME.—Where a mortgage is executed by a debtor merely to indeminify his surety, whatever equity may arise in favor of the creditor arises afterward and in consequence of the debtor's insolvency; and until this equity arises, the surety has a right to release the security, and this right continues even after the debtor's insolvency, if the release was made in good faith, and before any claim is made upon him for it. (Page 176.)

3. MORTGAGE—TO DECEASED SURETY—EFFECT.—By a mortgage to indemnify a deceased surety no legal interest passed, either to the estate of deceased or to his heirs. (Page 176.)

4. Subrogation—Parties.—A creditor cannot secure any rights through a deceased surety to whom in his lifetime the debtor had executed a mortgage to indemnify him against liability if neither the heirs nor the legal representatives of such surety were made parties to the proceeding. (Page 177.)

5. Same—Laches.—Creditors who have waited for twenty years after a release of a mortgage was executed by the sureties of their debtor before asking to be subrogated to the rights of the sureties under the mortgage, and until *bona fide* purchasers have acquired the land, are guilty of laches. (Page 177.)

Appeal from Yell Circuit Court in Chancery.

William L. Moose, Judge.

Affirmed.

### STATEMENT BY THE COURT.

W. D. Jacoway was on the 16th of March, 1867, appointed administrator of the estate of Samuel Dickens, who had died in Yell County on the 2d day of the same month. Jacoway gave bond as administrator, and entered upon the discharge of his duties as administrator of that estate. Afterwards, in 1875, the estate still being in his charge as administrator, he executed to the sureties on his administrator's bond a mortgage on certain lands owned by him.

The conditions of this mortgage are as follows, towit:

"Provided, nevertheless, that whereas the said R. P. Parks, Jacob Graves, Hiram Dacus, Joseph Gault, J. M. Cole and L. T. Brown did on the 16th day of March, A. D., 1867, become the sureties of the said W. D. Jacoway on his bond as administrator of the estate of Samuel Dickens, deceased; and whereas said sureties did on the same day sign, seal and deliver said administration bond; and whereas said bond was filed and recorded on the 16th day of March, A. D. 1867, and the same is now of record in letters of adminstration, Record A, pp. 227, 228; and whereas the administration of said estate is unsettled, and the said W. D. Jacoway is desirous that his said securities shall entertain no reasonable fears or sustain any loss in the premises.

"Now, know ye, if the said W. D. Jacoway shall make full, complete and perfect settlement of said estate, and shall them, his said securities, save harmless from any and all judgments

and decrees of any court which may be rendered against them as such securities on said administration bond, then in that case the foregoing deed of mortgage shall be void; otherwise to be and remain in full force and effect."

Afterwards, on the 15th day of April, 1875, Jacoway filed in the probate court his fifth account current and final settlement, showing a balance of $7,216.64 in his hands. This account was confirmed by the court in July, 1875, and on the 15th day of July, 1875, the court entered an order directing Jacoway as administrator to distribute this sum *pro rata* on all fourth-class claims probated against the estate, and pay to the owners of such claims 39 cents and 8 mills on each dollar of their respective claims.

Jacoway, in pursuance of this order, subsequently distributed the same to all of the fourth-class creditors, except A. J. Dyer and Isabella Johnston. He tendered to each of them also the sum required, but did so on condition that they execute to him a receipt in full of all demands against the estate. They declined to give a receipt in full, and no part of their claims was paid.

In 1876 A. J. Dyer and Isabella Johnston filed a suit against Jacoway and his bondsmen to surcharge and falsify his fifth account current and final settlement. This suit was brought in the wrong district of the county, and was in 1877 dismissed for want of jurisdiction. In 1878 the same parties brought a similar action in the other district of the county against Jacoway and his sureties. On the 19th of July, 1878, Jacoway executed another mortgage to his securities to protect them against liability on his bond, the conditions therein being substantially the same as the mortgage to them executed in 1875. One of the sureties was dead at the time the first mortgage was executed, and two were dead when the last mortgage was executed. The suit in equity was dismissed for want of equity, and this judgment was reversed on appeal. See *Dyer* v. *Jacoway,* 42 Ark. 186. Afterwards a decree was rendered against Jacoway and his bondsmen in that action, and this judgment was again reversed by the Supreme Court, and the cause remanded for further proceedings. See *Dyer* v. *Jacoway,* 50 Ark. 217.

A final decree in said case was entered in the Yell Circuit Court in chancery under the directions of said mandate at the August term, 1893, thereof, surcharging and falsifying the

account of the administrator in accordance with the aforesaid opinion of the court. Said decree further provides as follows:

"And it is further ordered that the administration of the estate of the said Samuel Dickens be remanded back to the probate court, to be administered in due course of law, and that this decree be certified by the clerk under the seal of this court to the probate court of Yell County in and for the Danville District, and the proceedings in the due course of administration of said estate be continued there upon the basis of the said Jacoway's fifth annual settlement, as the same is corrected and reformed by this decree."

Afterwards the probate court entered an order making a final settlement in the case, from which judgment an appeal was taken to the circuit court. That court made some changes in the judgment of the probate court, and both parties appealed from the judgment of the circuit court to the Supreme Court. The judgment of the circuit court was reversed, and the clerk of the Supreme Court was ordered to restate the account in accordance with the opinion. See *Jacoway* v. *Hall*, 67 Ark. 340.

In pursuance to the mandate of the Supreme Court, the circuit court of Yell County for the Danville District, at its August term, 1900, found that Jacoway was due the estate of Dickens the sum of $2,350.32. But this indebtedness of Jacoway to the estate is made up almost entirely of amounts which had been found due from Jacoway by probate court in 1875, and which he had been ordered to pay over to the fourth-class claimants in that year, and the interests on such amounts as of the date of April 15, 1895, with interest at 6 per cent. until paid, and judgment was entered against Jacoway in favor of plaintiff A. J. Dyer for $120.90, and in favor of the estate of Isabella A. Johnston for something over $2,000. After the recovery of this judgment A. J. Dyer and the administrator of the estate of Isabella A. Johnston brought this suit to be subrogated to the rights of the sureties in the mortgage of April, 1875, and to foreclose the same. The complaint alleged that Brooks, Neely & Company were in possession of the lands mortgaged, and they were made defendants to the action. The complaint further alleged that W. D. Jacoway had conveyed certain lands to his children in fraud of his creditors, and asked that such conveyances be set aside, and the lands subjected to the payment of the claims of plaintiffs.

The defendants, Brooks, Neely & Company, who now claim the land mortgaged to the sureties, filed an answer showing that the sureties to whom the mortgage was executed had executed a written release of this mortgage to Jacoway in 1882. That afterward Jacoway had in 1882 conveyed a part of this land to one Atwood, who in turn conveyed it to James K. Perry, and that the remainder of the land had been sold and conveyed by Jacoway to said Perry in 1886, and that Brooks, Neely & Company hold under Perry.

Defendants alleged that Atwood and his grantor, by virtue of said release and conveyance, acquired title to the property free from the lien of the mortgage, and they further set up the statute of limitations and laches in bar of the action. Jacoway and his children filed an answer, in which they deny that the conveyance to his children, referred to in the complaint, was made to defraud creditors, or that Jacoway is the owner of such land.

Upon the hearing the chancellor found that Jacoway, at the time he conveyed the lands to his children referred to in the complaint, was perfectly solvent, and owned much more property than was required to pay his debts, and that no right of subrogation was shown, and that on the whole case there was no equity in the complaint, and dismissed the same.

From this judgment plaintiffs appealed.

*Ratcliffe & Fletcher,* for appellants.

*Sellers & Sellers, J. M. Parker* and *Moore & Smith,* for appellees.

RIDDICK, J., (after stating the facts.) This is a suit in equity by certain creditors of the estate of Samuel Dickens to be subrogated to the rights of the sureties on the bond of the administrator of that estate in a mortgage executed by the administrator to them to indemnify and protect them from liability on such bond. The complaint also set up that certain conveyances made by the administrator to his children were fraudulent, and asked that they be set aside. The chancellor found against the plaintiffs on both issues, and in the brief and argument in this court counsel for plaintiff do not ask us to review the finding of the chancellor as to the conveyances made by the administrator to

his children many years ago. But they insist that under the facts they are entitled to be subrogated to the rights of the sureties in the mortgage executed to them by the administrator.

Now, there seems to be a distinction between those conveyances made by a principal to a surety both for the purpose of protecting him and to secure the payment of the debt and those executed merely to indemnify the sureties against liability. If the conveyances are made to the surety for the purpose of securing the payment of the debt, the creditor has an interest therein which the surety cannot destroy. But if the conveyance to the surety is only to indemnify him, then such security does not, in the first instance, attach to the debt, and whatever equity may arise in favor of the creditor with regard to the security arises afterwards, and in consequence of the insolvency of the parties principally liable for the debt. Until this equity arises, the surety has a right in equity as well as at law to release the security. Even after such insolvency the mortgagee may surrender the security, if he does it in good faith, and before any claim is made upon him for it. The application of it for the benefit of third persons can only be accomplished by the interposition of a court of equity, and in case the mortgagee still claims the security, or when he has conveyed it under circumstances tending to show bad faith or collusion betwen him and the mortgagor. *Jones* v. *Quinnipiack Bank,* 29 Conn. 25; *Daniel* v. *Hunt,* 77 Ala. 567; *Fertig* v. *Henne,* 197 Pa. 560; *Pool* v. *Doster,* 59 Miss. 258; *Steward* v. *Welch,* 84 Me. 308; Jones, Mort. (6th Ed.) § 387; Harris, Subrogation, 591, 594.

But in this case the mortgage was executed in 1875 to the six sureties on the bond of Jacoway. At the time the mortgage was executed, J. M. Cole, one of the sureties named therein as a grantor, had been dead three years, and neither he or his heirs took any legal interest by virtue of the mortgage. Brown, another one of the sureties, died in 1876. Afterwards, in 1882, the four remaining sureties executed a release to Jacoway, in order that he might sell the land. The facts show that this release was executed in good faith, and that afterwards the land mortgaged passed into the hands of parties who paid a valuable consideration therefor, and came through mesne conveyances into the possession of the defendants, Brooks, Neely & Company, who are *bona*

*fide* holders for value. The only surety who took any interest by such mortgage that did not join in the execution of the release was Brown, who had been dead six years before the release was executed. But plaintiffs can secure no rights through him in this proceeding for the reason that none of his heirs or legal representatives were made parties to this action. *Bond* v. *Montgomery,* 56 Ark. 563; *Harris* v. *Watson, Ib.* 574.

The release of the other sureties was executed in 1882, and it was twenty years afterwards before it was questioned, and before the creditors brought this action to be subrogated to the rights of their sureties. Even if the cerditors originally had the right to enforce this mortgage for the payment of these debts, we think that it is too late to do so now, twenty years after the execution of such release. The recent case of *Wallace* v. *Swepston,* 74 Ark. 520, is conclusive on that point, on the doctrine of laches, and we refer to the opinion in that case for a full discussion of the question.

Finding no error on the points presented, the judgment is affirmed.